JOAN LOMBARD LIVINGSTON, Complainant-Appellee, v. ROBERT SIMPSON LIVINGSTON, Defendant-Appellant.—429 S.W.(2d) 452.

Western Section. March 3, 1967.

Certiorari Denied by Supreme Court June 5, 1967.

272

James W. K. Johnson, Knoxville, for appellant.

Francis W. Headman, Knoxville, for appellee.

CARNEY, J. This case was argued before the Court of Appeals of Tennessee sitting en banc at Knoxville.

The defendant below, Dr. Robert Simpson Livingston, has appealed and assigned error to a judgment of $9,226 entered in the Chancery Court of Knox County in favor of his former wife, Mrs. Joan Lombard Livingston, the complainant below. The judgment represents contribution in the amount of approximately one-half of the expenditures made by Mrs. Livingston for the support of their minor son, Robert Stuart Livingston, usually called Bobby, from May, 1954, to the date of the entry of the judgment on June 1, 1966. Bobby is a retarded child.

The appellant is a Doctor of Physics and is employed at the atomic energy installation at Oak Ridge, Anderson County, Tennessee. Both he and his former wife are now residents of Knox County, Tennessee. They were married on July 31, 1938, in Los Gatos, California. In October, 1943, they moved to Oak Ridge, Anderson County, Tennessee, where they lived continuously until May 7, 1954, when Mrs. Livingston was granted an absolute divorce on her cross-bill in the Trial Justice Court of Anderson County, Tennessee.

Dr. Livingston remarried about a year after the divorce and he and his second wife now have three children. Mrs Livingston has not remarried.

At the time of the divorce Mrs. Livingston also was employed in the atomic energy installation as a statistician making a salary of approximately $300 per month. Dr. Livingston's salary was approximately $1,100 per month and his take-home pay was approximately $780 per month. Dr. and Mrs. Livingston had two sons born to the marriage: Lawrence Dean Livingston who was 8 years of age at the time of the divorce and Bobby who was 6. At the time of the divorce Bobby was in the Devereaux School at Devon, Pennsylvania. Dr. Livingston had been paying the school $400 per month for his maintenance and care.

In the divorce decree Mrs. Livingston was given custody of the two minor children, Lawrence and Bobby. She received alimony in solido consisting of furniture, automobile and government bonds. In addition, Dr. Livingston was ordered to pay Mrs. Livingston $450 per month as "alimony." The only furniture decreed to Dr. Livingston was a roll-away bed and a filing cabinet.

Dr. Livingston paid the $400 monthly tuition for Bobby at Devereaux School for April, 1954, the month the divorce was granted, and Mrs. Livingston paid the $400 payment for the month of May, 1954. She removed the child to the Kings Daughters Hospital School at Columbia, Tennessee, in June, 1954, where the monthly charges were considerably cheaper. She kept Bobby in Kings Daughters Hospital School for many months and later he was placed in Martha's Vineyard Hospital School in Springfield, Tennessee. For a year or two Mrs. Livingston tried keeping Bobby at her home but this was not good for Bobby or Mrs. Livingston. Sometime prior to 1963 he was admitted to the Greene Valley Hospital School located at Greeneville, Tennessee. The institution

is supported and maintained by the State of Tennessee. The monthly cost is $75. Dr. Livingston paid the alimony of $450 per month to Mrs. Livingston continuously from April, 1954, until April, 1963. During this time Mrs. Livingston was very hostile toward Dr. Livingston and made every effort to conceal the whereabouts of Bobby from his father. When she learned that Dr. Livingston had visited Bobby she would move the child to another school to keep the father from seeing him.

The final decree of divorce in the Trial Justice Court of Anderson County, Tennessee, contained no specific provisions for the support of the two minor children except Dr. Livingston was ordered to keep in full force and effect the life insurance which he then had excluding term life insurance and group life insurance. He was ordered to make his son, Lawrence Dean Livingston, beneficiary of one-half of such insurance and his other son, Bobby, the beneficiary of the other one-half of his life insurance. The decree further specified that if the defendant should cancel such insurance the cash surrender value should be paid over to Mrs. Livingston or if the cash surrender values were applied for the purchase of paid-up insurance then the minor children, Lawrence Dean Livingston and Bobby Livingston, should be the beneficiaries thereof.

After the divorce decree in April, 1954, Mrs. Livingston had full custody of the children until April, 1963. During this time she provided all of the support for both children and made no request of Dr. Livingston for any contribution toward their support. Mrs. Livingston claimed the two boys as her dependents on her federal income tax return.

On April 2, 1963, Mr. Livingston filed a petition in the original cause in the Trial Justice Court of Anderson

County, Tennessee, seeking a modification of the original decree and asking that he be awarded the custody of the two minor children and to be relieved of making the $450 monthly payments to Mrs. Livingston. He averred that the older son, Lawrence, then aged 17, had not been doing well in school while living with Mrs. Livingston and that Mrs. Livingston had concealed the whereabouts of the younger son, Bobby, from the petitioner and had denied him the visitation rights which he was granted in the original divorce decree.

On May 8, 1963, Mrs. Livingston, before filing any plea to the petition in Anderson County for change of custody, filed the present suit in the Chancery Court of Knox County enjoining the prosecution of the petition in Trial Justice Court of Anderson County, Tennessee, and seeking a recovery of one-half of the amounts which she had expended for the support of the two children during the period from May, 1954, to the time of filing of the bill. The bill averred that the $450 per month which she had received from Dr. Livingston was only alimony and no part of the same was allocable to child support and that therefore, Dr. Livingston was obligated to pay one-half of the cost of support of the two minor children.

A general demurrer filed by Dr. Livingston was sustained by the Chancellor and the cause was appealed by Mrs. Livingston to the Supreme Court. On December 5, 1963, the Supreme Court sustained the demurrer insofar as it related to the injunction against prosecution of the petition in the Trial Justice Court of Anderson County, Tennessee, but reversed the action of the Chancellor for trial insofar as it applied to the recovery of a judgment for contribution for the support of the two minor chil-

dren. The Supreme Court observed that "alimony, in its proper significance, is not maintenance to the children but to the wife; and the fact that there has been a judgment of divorce, with alimony and custody of the children to the wife, will not of itself operate as a bar to a subsequent claim against the husband for the children's maintenance." The Court referred to the case of Pretzinger v. Pretzinger, 45 Ohio St. 452, 15 N.E. 471, 4 Am.St.Rep. 542, which it felt was on all fours with the case then under consideration. In his opinion Judge Burnett, now Chief Justice, made the following statement: "The original bill directly alleges that this alimony was not for the purpose of the maintenance and support of these children. Therefore, clearly under this allegation, this question must be answered and proof taken to determine whether or not the term alimony used in the Anderson County case did cover maintenance and support of these children." The case was remanded to the Chancery Court of Knox County.

Mrs. Livingston then filed answer to the petition for change of custody, etc. in the Trial Justice Court of Anderson County, Tennessee. On August 7, 1964, the petition of Dr. Livingston was sustained in part. He was awarded the custody of the older son, Lawrence, but the custody of the younger son, Bobby, who was then in Greene Valley Hospital School, was left with the mother. The judge, Honorable W. B. Lewallwen, reduced the monthly payment to Mrs. Livingston from $450 to $300 of which amount $100 was designated as support for the handicapped son, Bobby. On October 28, 1964, Judge Lewallwen granted a petition to rehear so as to give technical custody of Bobby to his father because of the tax advantages accruing to Dr. Livingston. Commis-

sioner of Internal Revenue v. Lester (1961), 366 U.S. 299; 81 S.Ct. 1343, 6 L.Ed.2d 306.

The payments of $300 per month to Mrs. Livingston were reduced to $225.00 per month of which $25.00 was designated as child support to be used by Mrs. Livingston in any manner she saw fit for the benefit of Bobby. No appeal was taken by Mrs. Livingston to these decrees in the Trial Justice Court of Anderson County.

The case for contribution now before this court on appeal was heard before Chancellor Charles E. Dawson on oral testimony according to the forms of Chancery on November 26, 1964, and on January 11, 1966. The opinion of the Chancellor rendered on April 20, 1966, was adverse to Dr. Livingston.

At the time of the trial below in Chancery Court, Dr. Livingston's household included his second wife, their three children and his oldest son, Lawrence. Dr. Livingston's salary at Oak Ridge had increased to $22,000 per year with a take-home pay of about $16,000.

Mrs. Livingston had been employed by the State of Tennessee, Department of Public Welfare, at a salary of approximately $350 per month for several years prior to the trial. She had been attending the University of Tennessee at the expense of the Tennessee Department of Public Welfare, working on her master's degree as a welfare worker. However, Mrs. Livingston was not working at the time of the trial.

She testified that she considered all the $450 as alimony for herself and no part of the same support for the children. On cross-examination she explained her reason for making no demands upon Dr. Livingston nor filing petition to the court in Anderson County for child

support for the period of some nine years was that Dr. Livingston was not well for a short time after the divorce; that she was not on speaking terms with him because he had remarried and because she did not want to embarrass her children by making claim for child support; that she intended to support them as long as she had income; and that it was only after she ceased to have employment income that she made claim in Chancery Court for contribution for one-half of the support of the two children.

Dr. Livingston testified that he understood at all times that the $450 per month payment to Mrs. Livingston was for the benefit of her and their two children. The Chancellor held Dr. Livingston's testimony as to his understanding of the decree incompetent.

Defendant relied very heavily upon the deposition of his former attorney, Mr. Roland Prince, now the Judge of the Law and Equity Court of Anderson County. Judge Prince represented Dr. Livingston in his divorce case. He testified by deposition that he and Hon. Sydney Davis, attorney of Clinton, Tennessee, who represented Mrs. Livingston, had innumerable conferences relative to an agreed decree on child custody, property settlement, alimony and child support money; and that they had a final conference at which Judge Prince, Mr. Davis, Mrs. Livingston and Dr. Livingston were present and the details of the agreement worked out; and that everybody fully understood that the award of $450 to Mrs. Livingston would be for her and for the support of the two minor children, custody of whom was to be awarded to Mrs. Livingston. Judge Prince explained that the term "alimony" was used and "child support" omitted deliberately by the parties in order to make the payment of

$450 fully deductible on Dr. Livingston's federal income tax return. Judge Prince suggested that if Mr. Davis, attorney for Mrs. Livingston, were consulted, his file would corroborate Judge Prince's testimony in every detail. Mr. Davis was not offered as a witness by Mrs. Livingston. Neither Mrs. Livingston nor Mr. Davis was offered as witnesses to deny Judge Prince's testimony.

His Honor the Chancellor first held that the testimony of Judge Prince was not admissible to show that the $450 per month payment to Mrs. Livingston was to be considered as support for her and also for the children. However, in his opinion apparently the Chancellor did consider the testimony of Judge Prince because he made the following finding:

"The entire proof in the case reveals the fact that the defendant father insisted upon the use of the term 'alimony' providing $450.00 for his wife in order that he might use the entire sum as a tax deduction on his Federal income tax, well knowing that if any portion of it were designated as child support, he could not take credit therefor. In this situation he is guilty of unclean hands in seeking a benefit to which he would be clearly not entitled in the event his contention in this case is that some of the sum provided as alimony was intended to be for child support. He did not claim the children as dependents. The proof also reveals that the complainant mother reported the alimony as paid to her as income to her from the entry of the divorce decree to the date of the filing of the bill in this Court. That is the way these parties interpreted this decree since the divorce was handed down."

The appellant, Dr. Livingston, has made four assignments of error which pose two determinative questions

to be decided by this Court: (1) Did the Chancellor err in holding that the testimony of Judge Prince was not admissible; and (2) did the Chancellor err in failing to decree that Mrs. Livingston's claim was barred by laches since she delayed some nine years to make claim for contribution for the support of the two minor children.

The first question requires a construction of the divorce decree and especially the term "alimony." A decree must be construed in the light of the pleadings, particularly the prayer of the bill and the apparent purposes in the minds of the draftsman and the Court. Southern Presbyterian University v. City of Clarksville, 149 Tenn. (22 Thompson) 256, 259 S.W. 550. Judgments of Courts are to be construed like other written instruments. Branch v. Branch, 1952, 35 Tenn.App. 552, 249 S.W.2d 581. Thus it would appear that the general rules of evidence regarding the admission of parole evidence in the construction of written instruments apply to the admission of parol evidence in the construction of the judgment or decree of a Court.

The solicitor for appellant argues that the term "alimony" as used in the divorce decree is ambiguous and that therefore parol evidence should be admitted to show that it was intended to include support for both the wife and the children. Solicitor for appellant points out that the caption of T.C.A. Section 36-820 is entitled, "Alimony for support of wife and children;" that the caption of this same section was so entitled in the Code Supplement of 1950, Section 8446, and in Williams Code of Tennessee of 1934, Section 8446, as well as in Section 4221 of Shannon's Annotated Code of Tennessee, 1917. However, T.C.A. Section 1-309 provides as follows:

"1-309. Section headings and histories.—Headings to sections in this Code and the references at the end of such sections giving the source or history of the respective sections shall not be construed as part of the law."

■ There is no contention or pleading that any portion of the divorce decree was a result of fraud, accident or mistake. The dictionary definition for alimony is "The allowance which a husband, by order of Court, pays to his wife, living separate from him, for her maintenance. Bishop on Marriage and Divorce, Section 549."

Our Tennessee cases generally follow this definition. White v. Bates, 89 Tenn. 570, 15 S.W. 651. So do the great majority of the courts throughout the nation. A minority consider the term "alimony" to include child support. 27A C.J.S. Divorce sec. 202, p. 871.

■ In the Trial Justice Court of Anderson County, Mrs. Livingston asked for child support, the divorce decree did make some provision for the welfare of the children by requiring Dr. Livingston to make them beneficiaries of his insurance. We lean to the view that the divorce decree, since it made no specific mention of monthly support for the children but otherwise provided for their welfare, is to some extent ambiguous. However, it becomes unnecessary for us to adjudicate this question because the deposition of Judge Prince which is binding on the appellant shows affirmatively that child support was not included in the term "alimony" and that the draftsman of the decree, with the approval of the Trial Judge, intentionally omitted child support from the decree and intentionally designated the $450 monthly payment to Mrs. Livingston as alimony to the exclusion of

child support. Therefore, we hold that His Honor the Chancellor correctly held that the testimony of Judge Prince was not admissible for the purpose of showing that the term "alimony" in the divorce decree also included child support.

■ However, we do hold that the testimony of Judge Prince was admissible for another purpose. "The test as to application of the parol evidence rule is whether the testimony as to oral agreements or negotiations varies or contradicts the instrument in question or merely explains same." Marron v. Scarbrough (1958), 44 Tenn.App. 414, 451, 314 S.W.2d 165, 181.

■ The present suit was brought by Mrs. Livingston for the recovery of contributions for the support of her two children, custody of whom was awarded to her in the decree of divorce. The testimony of Judge Prince is competent for the purpose of explaining why the Trial Judge in the divorce case made no monthly award for child support.

Considered in its simplest terms Judge Prince's testimony, which is not controverted, is that Mrs. Livingston expressly or impliedly agreed that if the Court decreed her $450 per month alimony, she would support the children. She, at the time of the divorce, had a personal income of over $300 per month, making a total income of over $750 after the divorce. The subsequent actions of both Dr. Livingston and Mrs. Livingston fully corroborate such agreement. The decree was entered awarding Mrs. Livingston $450 per month alimony and for nine years thereafter she supported the children and made no demand upon nor request of Dr. Livingston for any contribution. She filed no petition in Court requesting an order upon Dr. Livingston for child support.

It is significant that only after Dr. Livingston filed a petition in the original suit asking for a change of custody of the two children and for a reduction in the monthly alimony payments did Mrs. Livingston ask for reimbursement of child support expenses.

Of course, there are a number of Tennessee cases which hold that the father continues liable for the support of his minor children even though there has been a divorce and award of custody to the mother. Brooks v. Brooks (1933), 166 Tenn. 255, 61 S.W.2d 654; Dawson v. Dawson (1937), 23 Tenn.App. 556, 135 S.W.2d 458; Coleman v. Coleman (1950), 190 Tenn. 286, 229 S.W.2d 341; Roble v. Roble (1956), 41 Tenn.App. 412, 295 S.W.2d 817; Damron v. Damron (1963), 212 Tenn. 14, 367 S.W.2d 476. These cases are not controlling of the case at bar because it does not appear that in any of them the former wife and mother had supported the children under an agreement with the father, express or implied.

Very probably Dr. Livingston and his solicitor agreed to a larger amount of alimony per month to Mrs. Livingston because of the fact that Dr. Livingston was being relieved of the child support. We think it most inequitable to require Dr. Livingston at this late date to reimburse Mrs. Livingston for a portion of the sums expended voluntarily by her for the support of the two children during the nine-year period when she had the unqualified right at any time to reopen the original case in Trial Justice Court of Anderson County, Tennessee, and obtain an adjudication as to child support. T.C.A. Section 36-820; Davenport v. Davenport (1942), 178 Tenn. 517, 160 S.W.2d 406, and Thomas v. Thomas (1959), 46 Tenn.App. 572, 330 S.W.2d 583.

For the same reasons we think Mrs. Livingston has been guilty of laches in waiting nine years to make claim on Dr. Livingston for contribution for child support. Dr. Livingston has been prejudiced by such delay because he too would have had an opportunity to file a petition in the original case for adjustment downward of the alimony payments if Mrs. Livingston had made demand on him for contribution on the child support. Nicholson v. Holt, 174 Tenn. 358, 125 S.W.2d 483; Ledford v. Lee, 29 Tenn. App. 660, 200 S.W.2d 393.

The assignments of error will be sustained, the decree of the lower Court reversed and complainant's suit dismissed. The costs in the Court below and in this Court will be taxed one-half to the complainant and one-half to the defendant. T.C.A. Section 20-1621.

All concur.