Deborah A. HALE, Plaintiff–Appellee,

v.

Edward E. HALE, Defendant–Appellant.

Court of Appeals of Tennessee,
Western Section, at Nashville.

April 1, 1992.

Application for Permission to Appeal
Denied by Supreme Court
June 29, 1992.

Stephen W. Pate, Nashville, for plaintiff-appellee.

Randle W. Hill, Jr., Gallatin, for defendant-appellant.

CRAWFORD, Judge.

This case involves the interpretation of a divorce decree which incorporated the marital dissolution agreement of the parties to this action.

Respondent, Edward E. Hale (hereinafter Husband), and petitioner, Deborah A. Hale (hereinafter Wife), were divorced by final decree of the trial court on October 19, 1990. The decree incorporated a Marital

Dissolution Agreement (hereinafter MDA) previously negotiated by the parties. The divorce decree, among other things, awarded the divorce to Wife on the grounds of irreconcilable differences; entrusted the custody of the parties' three minor children to Wife; ordered Husband to pay Wife the sum of $826.00 per month for the support and maintenance of the parties' three minor children, ordered Husband to pay medical insurance on the parties' minor children, and to be personally and individually responsible for the payment of all reasonable and necessary medical, dental and optical expenses in excess of or not covered by that medical insurance, and ordered Husband to maintain a life insurance policy on himself in the amount of $150,000.00 with the minor children named as co-beneficiaries thereof; divested Husband's interest in the parties' marital home and vested such interest in Wife, ordering Wife to be individually responsible for the payment of the indebtedness secured by a first mortgage on the home and to hold Husband harmless for any liability thereon. The decree further provided "that Husband shall be personally and individually responsible for the balance of the second mortgage owing on the parties' '[marital home]' (approximately $25,900.00)" [1]; that he was to pay the arrearage which had accrued from the entry of the decree; that neither party shall be obligated to pay any alimony to the other, either rehabilitative, for support and maintenance or permanent, and that Husband shall be responsible for a portion of Wife's attorney's fees in the amount of $500.00.

On January 18, 1991, Wife filed a petition asking the trial court to find Husband in contempt of court for failure to pay child support as ordered, further seeking for all future child support to be paid through a wage assignment order and alleging that Husband had continually failed to make the child support payments in a timely manner. Wife then filed an amended petition, alleging that Husband had not made the second mortgage payments as ordered, and asking, inter alia, for the court to order Husband to specifically perform his obligations under the final decree regarding payment of all arrearages and future payments owed on the second mortgage on Wife's home; for the court to award her a judgment on the total arrearage owed on the second mortgage and to find Husband to be in willful and intentional contempt of court for failure to make the second mortgage payments as ordered.

Husband filed an answer to Wife's original petition for contempt, denying all material allegations therein. At about the same time, Husband also filed a petition for personal bankruptcy with the U.S. Bankruptcy Court.

On March 5, 1991, the trial court entered an order on Wife's original and amended petitions for contempt and for wage assignment wherein the court ordered Husband to pay his child support payments of $826.00 per month through a wage assignment order, plus the court clerk's commission for five percent of a total of $867.30 per month, but did not find Husband to be in contempt of court for failure to make child support payments timely and stayed indefinitely the amended petition, pending further orders of the U.S. Bankruptcy Court.

On May 17, 1991, Wife filed a motion to set the amended petition for trial, citing as grounds an agreed order modifying the automatic stay of bankruptcy, which had the effect of allowing the second mortgage on Wife's home to be foreclosed. Wife also filed a motion on May 17, 1991, to determine dischargeability of debts, asking the court to determine that the second mortgage owing on Wife's home and all of the Wife's attorney fees be deemed in the nature of alimony, maintenance or support, and thus, nondischargeable in bankruptcy.

In his response to wife's motion to determine dischargeability of debts, Husband denied that the second mortgage and attorney fees were in the nature of alimony, maintenance or support, contending instead they constituted debts dischargeable under the bankruptcy code.

---

1. Wife was not obligated on the note evidencing this indebtedness, but she did execute the second mortgage as additional security for the loan.

The trial court, in an order dated June 19, 1991, found that by Husband's agreeing to be personally and individually responsible for the balance owing on the second mortgage, the parties had intended to create a support obligation for the parties' minor children in excess of the court ordered child support payment pursuant to the child support guidelines; that the assumption of the second mortgage by Husband had the actual effect of providing additional support and preserving the home for the parties' minor children; that, therefore, there was reason to deviate from the present child support guidelines; that the amount of additional support represented by the assumption of the second mortgage was reasonable and not excessive in consideration of Husband's being able-bodied and gainfully employed since the date of the entry of the final decree, and that Wife's motion should be granted. The court also ordered that Wife's attorney's fees, in the amount of $850.00 ($500.00 ordered in the divorce decree and $350.00 for a subsequent order on March 5, 1991), should also be deemed support and maintenance of the parties three minor children.

Husband has appealed this order and presents two issues for review, the first of which we consider to be dispositive: [2]

> Whether the trial court erred in determining that when Husband promised, in a marital dissolution agreement, to pay the second mortgage on Wife's home and her attorney's fees, he assumed debts in the nature of child support which are nondischargeable under the federal bankruptcy code.

The leading case in addressing the issue of dischargeability in such cases as this is *In re Calhoun*, 715 F.2d 1103 (6th Cir.1983). *Calhoun* held that, under 11 U.S.C. § 523(a)(5), payments must be actually in the nature of alimony or support, to be exempt from discharge but that such payments need not be made directly to the debtor's spouse or to his children.[3] The Court further found that Congress intended the determination of what constitutes alimony, maintenance, or support to be made by bankruptcy law, not state law. To make this determination, the Court fashioned a four-prong test: (1) whether the state court or the parties intended to create a support obligation through the assumption of a joint debt; (2) whether the assumption of the debt has the actual effect of providing necessary support to insure the daily needs of the former spouse and children are satisfied; (3) whether the amount of the support represented by the assumption is so excessive as to be manifestly unreasonable when measured by traditional concepts of support; (4) if the amount of support is unreasonable, how much of it should be discharged for the purpose of bankruptcy. Although we are not bound by the Sixth Circuit's opinion in *Calhoun*, we find the Court's reasoning to be persuasive.

The Court recognized that, in order to apply the first prong, a court seeking to resolve the issue of dischargeability must necessarily look to state law, because, "[t]he obligation to provide support in the first place is necessarily determined by state law." 715 F.2d at 1107. Application of this prong requires that we construe the divorce decree and the MDA which it incorporated. A divorce decree is to be construed like other written instruments. See *Branch v. Branch*, 35 Tenn.App. 552, 249 S.W.2d 581 (1952). A decree must be con-

---

**2.** Husband's second issue is whether evidence not considered by the trial court at the hearing appealed from, but which was introduced at a later hearing after the order appealed from was entered, is reviewable on appeal and properly includable in the record on appeal. Since we do not consider any evidence from the second hearing in determining this appeal, Husband's second issue is pretermitted.

**3.** While the bankruptcy code gives the bankruptcy court exclusive jurisdiction to determine the issue of the dischargeability for most debts, jurisdiction to determine the dischargeability of alimony, child support or maintenance of wife or child is concurrent with that of the state court. The bankruptcy court may be bound by the final order of the state court, after a full evidentiary hearing involving the same issue, on the theories of *res judicata* and collateral estoppel. *In re Rickman*, 79 Br. 753 (Bk.W.D.Tenn. 1987).

strued in light of the pleadings, particularly the prayer of the bill and the apparent purposes in the minds of the draftsman and the court. *Livingston v. Livingston,* 58 Tenn.App. 271, 429 S.W.2d 452, 456 (1967). The general rules of evidence regarding the admission of parol evidence and the construction of written instruments also apply to the admission of parol evidence in the construction of a divorce decree. 429 S.W.2d at 456, 457. The test as to the application of the parol evidence rule is whether the testimony as to oral agreements or negotiations varies or contradicts the instrument in question or merely explains it. 429 S.W.2d at 457, citing *Marron v. Scarbrough,* 44 Tenn.App. 414, 451, 314 S.W.2d 165 (1958).

We must also bear in mind as we construe the decree that we do not have in this case the precise situation of *Calhoun.* In the case before us, Husband did not assume a joint obligation, but was already solely obligated to pay the indebtedness. Husband's obligation under the decree to pay this indebtedness was not to relieve Wife of the financial obligation of the note because she was not liable on the note anyway. Since Husband was the only one liable on the note, it would appear that any provision in the MDA and decree regarding his payment of the loan is for the sole purpose of preventing foreclosure, and thus to maintain a residence for the family. Husband's obligation under the decree was to preserve the residence by satisfying his own financial obligation.

As incorporated in the decree, the MDA is divided into eight sections. Section 1, which deals with child custody, support and visitation, makes specific provisions for how much child support Husband is to provide and in what form. This section makes no reference to any other part of the MDA. Section 2, dealing with real property, states that Wife is responsible for paying the first mortgage on what had been the parties' marital home, and further provides that Husband is to be responsible for paying the second mortgage on the home. Husband's agreement to pay the second mortgage is not characterized anywhere in the MDA, i.e., the MDA does not label the second mortgage payments as child support or alimony or anything else. With regard to alimony, Section 5 states:

> The parties agree that neither shall be obligated to pay any alimony to the other, either rehabilitative, for support and maintenance or permanent.

Section 8 states:

> The parties agree that husband shall be responsible for a portion of wife's attorney's fees in the amount of $500....

Although the parties agree in Section 5 that neither shall pay the other alimony, in Section 8, Husband agrees to pay part of Wife's attorney fees. Since, in divorce actions, the award of attorney fees is treated as alimony, see *Gilliam v. Gilliam,* 776 S.W.2d 81 (Tenn.App.1988), Sections 5 and 8 appear to be contradictory. The testimony of the parties with regard to the nature of Husband's agreement to pay the second mortgage is similarly at odds.

Wife testified at trial that the parties had originally agreed that Husband would pay Wife alimony in the amount of $250.00 cash, plus maintain the second mortgage, but, that after Husband retained counsel, he rescinded the original agreement and executed a second MDA, providing that in lieu of paying cash alimony, he would simply pay the second mortgage on the parties' home.

Wife also testified that when the divorce decree was entered, she was unable to pay the second mortgage, since her only income was her earnings of $50.00 per week. Wife conceded that the MDA entitled her to no direct cash alimony, but that she relinquished her claim to such alimony only because Husband had promised to be personally and individually responsible for the second mortgage.

Husband contradicted Wife by testifying that when he agreed to pay the second mortgage, he did not intend those payments to be any type of support—alimony or otherwise. Nevertheless, Husband testified that by payment of the second mortgage, Wife and the minor children could continue to reside in the home. Husband conceded that failure to make the second

mortgage payment would result in foreclosure and eviction of Wife and the children. Husband also stated that at the time he executed the second MDA, he intended to honor all of his obligations in the agreement and felt he could obtain the funds with which to do so.

In view of the parties' testimony and the language of the decree itself, the trial court construed the decree to mean that by Husband's agreeing to be personally and individually responsible for the balance owing on the second mortgage on Wife's real property, that the parties intended to create a support obligation for the couple's minor children. Obviously, the court found Wife's testimony on the parties' intent to be more credible than Husband's. In this nonjury case, the trial judge as the trier of fact had the opportunity to observe the manner and demeanor of both parties as they testified from the witness stand. The weight, faith and credit to be given to any witness' testimony lies in the first instance with the trier of fact and the credibility accorded will be given great weight by the appellate court. *Town of Alamo v. Forcum–James Co.*, 205 Tenn. 478, 327 S.W.2d 47 (1959); *Sisk v. Valley Forge Ins. Co.*, 640 S.W.2d 844 (Tenn.App.1982).

■ We agree with the trial court's construction, to the extent that the court found the parties intended that Husband's second mortgage payments to be support, but we believe the evidence preponderates in favor of the view that the parties intended that support to be in the nature of alimony, not child support. Although the agreement states that there would be no obligation for alimony, the agreement also provides for Husband to pay Wife's attorney fees which itself constitutes payment of alimony. Considering the language of the agreement and the testimony at trial, it is apparent that the reference to no obligation for alimony was referring to a payment obligation other than as expressed in the agreement itself.

The second prong of the test is whether the assumption of the second mortgage by Husband has the actual effect of providing support necessary for the daily needs of the spouse or the children.

Wife testified that, due to her extremely limited financial resources, she could not afford to make the second mortgage payment and that if Husband were to fail to make such payments, both she and her children would be forced to vacate the home upon foreclosure.

Husband did not dispute Wife's testimony and conceded on cross-examination that he knew if he failed to make the second mortgage payment timely, the house would be foreclosed and Wife and children would be forced to move out. In short, the evidence in the record is clear that Wife does not have the resources to pay the second mortgage debt and that she requires Husband's assistance on this matter. Thus, we find that the second prong of the *Calhoun* test is satisfied.

The third prong of the test is whether the amount of support represented by the assumption is so excessive as to be manifestly unreasonable when measured by traditional concepts of support. The trial court found that the additional support represented by the assumption of the second mortgage is reasonable and not excessive, considering that Husband is able-bodied and had been gainfully employed since the entry of the final decree of divorce.

The trial court mistakenly considered Husband's employment and income since the date of the final decree. The reasonableness of support in such cases must be determined on the basis of the supporting spouse's income ability to pay at the time the debt was assumed. *In re Calhoun* at 1110.

In the words of the *Calhoun* court:
... Under the mandate of Congress that the bankruptcy court fashion a common law of bankruptcy and the principle that one cannot contract away bankruptcy rights, the bankruptcy courts in the case of an obligation to hold the former spouse harmless on joint debts must, therefore, examine the ability to pay. If, **at the time the debts were assumed,** the assumption substantially exceeded a spouse's present and foreseeable ability

to pay, the amount of the assumption which exceeded that ability should not be characterized as in the nature of support. (Emphasis added.)

715 F.2d at 1110.

The record establishes that at the time Husband and Wife were divorced, Husband was able-bodied and gainfully employed, earning a gross monthly salary of $2,600.00 with a net take-home of $2,095.00. Husband's expense report, which was introduced as an exhibit at trial, showed that his expenses exceeded his net monthly take-home by $251.00 per month, but this deficit was premised on Husband paying $450.00 per month on the second mortgage—payments which the record shows he did not make. The record also shows that Husband could have paid $250.00 per month on the second mortgage and that this would have been enough to prevent foreclosure.

Thus, we do not find that Husband's obligation to prevent foreclosure of the second mortgage was manifestly unreasonable, and since we do not so find, we need not consider the fourth prong of the *Calhoun* test.

 Although the foregoing discussion has concentrated on the nature of Husband's promise to pay the second mortgage, the same analysis can be made regarding his promise to pay Wife's attorney fees. The parties' intent on this matter seems clear. Section 8 of the MDA unequivocally provides that Husband will be responsible for Wife's attorney fees up to $500.00, and the law is clear that the payment of attorney fees in divorce cases is to be considered alimony. See *Gilliam v. Gilliam,* 776 S.W.2d 81 (Tenn.App.1988). Similarly, given Wife's meager resources, Husband's payment of her attorney fees certainly would have the effect of providing her actual support. Finally, because of Husband's limited commitment on these fees, and Husband's ability to pay, we do not find such support to be unreasonable, as measured by the traditional concepts of support. Our findings, however, are limited to the amount of attorney fees which

Husband explicitly agreed to pay in the MDA.

The judgment of the trial court is modified to provide that Husband's obligations to prevent foreclosure of the second mortgage and to pay $500.00 attorney fees for wife are spousal support obligations.

As modified, the judgment of the trial court is affirmed, and this case is remanded to the trial court for such further proceedings as may be necessary. Costs of the appeal are assessed against the appellant.

TODD, P.J., and HIGHERS, J., concur.