643 So.2d 364 (1994)
Thomas Emerson FUTCH, Plaintiff-Appellee,
v.
Shellie Wynell Rodgers FUTCH, Defendant-Appellant.
No. 26149-CA.
Court of Appeal of Louisiana, Second Circuit.
September 23, 1994.
*366 Sockrider, Bolin & Anglin by D. Rex Anglin, Shreveport, for appellant.
Robert R. Earle, Farmerville, Theus, Grisham, Davis & Leigh by Ronald L. Davis, Jr., Phillip D. Myers, Monroe, for appellee.
Before VICTORY and BROWN, JJ., and JONES, J. Pro Tem.
BROWN, Judge.
This action to partition community property primarily presents the question of the classification of renewal commissions from insurance policies written during the marriage and, if classified as community, the appropriate method of valuation and division. From the trial court's classification of these renewal commissions as community and its method of apportionment, both parties appeal. For the reasons expressed below, we affirm in part, reverse in part and remand to the district court.

FACTS
Plaintiff, Thomas Emerson Futch, and defendant, Shellie Rodgers Futch, were married on November 24, 1971. On August 29, 1988, Mr. Futch filed a petition for separation. A judgment of separation was rendered on September 29, 1988, dissolving the former community of acquets and gains retroactive to August 29, 1988. Each party was recognized as the owner of an undivided one-half interest in all property of the former community. Mr. Futch filed a petition for divorce on March 20, 1989, and a judgment of divorce was rendered on May 4, 1989.[1]
On March 14, 1990, Shellie Futch filed a petition seeking to partition past and future commissions, renewals, bonuses and other entitlements paid to Thomas Futch by Farm Bureau Insurance Companies (Southern Farm Bureau Casualty, Louisiana Farm Bureau Mutual and Southern Farm Bureau Life Insurance Companies) subsequent to the termination of the former community. Mrs. Futch also filed an amended petition seeking recovery of medical expenses she incurred between the date of judicial separation and the date the judgment of divorce was rendered.[2] *367 Mr. Futch responded by asserting that all income received by him from Farm Bureau subsequent to the termination of the community property regime, August 29, 1988, was his separate property and thus not subject to partition. Mr. Futch also claimed entitlement to proceeds from the settlement of a lawsuit arising out of an automobile accident which occurred during the marriage and in which Mrs. Futch sustained serious personal injuries.
Trial was held on May 18, 1992, and judgment was rendered on August 13, 1992. The trial court classified the insurance commissions as community property and awarded Shellie Futch a sum representing one-half of what Thomas Futch would have received from Farm Bureau Insurance Companies had he resigned or been terminated from his employment on August 29, 1988 (the date the community regime ended). The trial court rejected Mrs. Futch's claim for reimbursement of medical expenses. Mr. Futch was awarded $7,500 for loss of consortium as his portion of the settlement proceeds. Mrs. Futch appealed and Mr. Futch answered the appeal.

DISCUSSION

Insurance Commissions Classification
Thomas Futch contends that renewal commissions received by him after the community ended from insurance policies written during the existence of the community are his separate property. Mr. Futch relies on Williams v. Williams, 590 So.2d 649 (La. App. 3d Cir.1991).[3]
Before an asset can be classified as community or separate, it must first be identified as property. Hare v. Hodgins, 586 So.2d 118 (La.1991). It is not required that a right become vested before it can be classified as a community asset subject to partition. Due v. Due, 342 So.2d 161 (La.1977); Michel v. Michel, 484 So.2d 829 (La.App. 1st Cir.1986); Boyle v. Boyle, 459 So.2d 735 (La. App. 4th Cir.1984). In Michel and Boyle, renewal commissions on insurance policies written during the community were held to be property interests earned by the agent-spouse. To the extent that a property interest derives from a spouse's employment during the existence of the marriage, it is a community asset subject to division upon dissolution of the marriage. LSA-C.C. Art. 2338; Hare, supra; Sims v. Sims, 358 So.2d 919 (La.1978); T.L. James & Co., Inc. v. Montgomery, 332 So.2d 834 (La.1976).
Although it may be impossible to perfectly divide renewal commissions generated by insurance policies written during the marriage, we disagree with Williams, supra, and conclude that these renewal commissions are community property subject to partition.

Valuation
LSA-R.S. 9:2801 affords the partitioning tribunal great flexibility in valuation and apportionment. Because of variations in communal situations, no one method or formula for division will work justice in every case. Hare, 586 So.2d at 127. As noted by the supreme court in Hare, the general rules for the partition of community property do not address all of the problematic ramifications of classifying, valuing and distributing each spouse's interest in assets such as pension benefits. Hare, supra, at 123.
Shellie Futch testified as follows. Prior to the separation, she was directly involved in the insurance business on a day-to-day basis for approximately 14½ years. During discovery, *368 Mrs. Futch obtained copies of the commission statements received by her ex-husband from Farm Bureau Insurance Companies. She calculated the commissions received by Mr. Futch through April 1991 and offered into evidence supporting documentation. The trial court kept the record open for the introduction of figures updated through April 1992, which were introduced as an exhibit entitled "Summary of All Commissions Due to the Community Regime." According to the "Summary of All Commissions," a total of $307,194.69 was paid to Thomas Futch from August 1988 through April 1992 on policies in place when the community property regime was terminated on August 29, 1988.
Thomas Futch testified that he was an agency manager for Farm Bureau Insurance Companies in Union and Claiborne parishes and had been so employed for 19½ years. Mr. Futch testified that the renewal commissions in dispute were received by him and that they were based upon the contracts introduced into evidence. He further stated that the commission figures offered by his ex-wife were accurate and were paid on policies written during the community's existence.
Mr. Futch stated that in the event his relationship with Farm Bureau Insurance Companies was terminated, he would receive "termination payments" as set forth in his contracts with the insurance companies. These contracts provide a formula for determining the termination payments that he would receive should he be terminated.
Thomas Futch further testified that the figures compiled by Shellie Futch from the commission statements do not accurately reflect the community's portion of the commissions shown therein. According to Mr. Futch, changes often occur that have a direct effect on the commissions subsequently received on these policies. Examples of these changes are coverage amount, liability limits, addition or deletion of vehicles or insureds, etc. On cross examination, Mr. Futch admitted that he had not reviewed the individual policies to determine whether there had in fact been any changes that would have affected his commissions.
James Evans, Operations Vice President for Farm Bureau Insurance Companies, testified that it was possible that a renewal commission received by Thomas Futch could have been on a policy written by another agent which had subsequently been assigned to Mr. Futch. Mr. Evans also testified that certain changes in policies would affect the amount of the commissions. Mr. Futch's right to receive the renewal commissions was established at the time the insurance was written, conditioned only upon the insurance policy remaining in effect and being coded to Mr. Futch at renewal time.
Gail Chisum, Vice President of Sales and State Sales Director for Farm Bureau Insurance Companies, testified that additional information to that submitted by Shellie Futch was needed to accurately calculate the community's interest in the commissions, such as who had written the policy and any changes that had been made since the policy was written. Mr. Chisum stated that this information could be found in records in Thomas Futch's possession.
After noting the lack of jurisprudential guidance, the trial court calculated Shellie Futch's share as one-half of the termination pay that Thomas Futch would have been entitled to had he been terminated or resigned on August 29, 1988, the date the community ended.
We find no basis for the apportionment method utilized by the trial court. Mr. Futch has not been terminated, nor has he resigned from his employment with Farm Bureau. Therefore, though we empathize with the court's dilemma, we find that utilization of this termination pay formula was erroneous.
It was uncontroverted that between August 29, 1988, and April 1992, Mr. Futch received $307,194.69 in renewal commissions attributable to policies in effect at the community's termination. At trial, it was Mr. Futch's position that his former wife was not entitled to any commission paid subsequent to termination of the community. Thus, no testimony addressed the issue of whether labor or effort was expended by Mr. Futch after the termination of the community to *369 keep the policies in effect. Nor was information presented concerning whether Mr. Futch was the agent who wrote or serviced each individual policy and what changes, if any, were made to each policy.
Equity requires a division in which Mr. Futch's separate labor and costs to keep the policies in effect are considered in determining the community's share. Hare, supra. See also K. Spaht and L. Hargrave, Matrimonial Regimes § 3.29, at 48, in 16 Louisiana Civil Law Treatise (supp.1994). We find the record lacking in evidence by which to make this determination. Therefore, we must remand the matter to the trial court for the taking of such evidence.
Mr. Futch is entitled to deduct from the gross renewal commissions an amount representative of his individual efforts and investments post-termination in producing these commissions. Hare, supra. It is Mr. Futch's burden to establish his entitlement to more than one-half of the renewal commissions. For many of the policies, no significant servicing may be required; however, for the policies that generate renewal commissions based on Mr. Futch's post-termination efforts or achievements, he, not the former community, is entitled to the fruits of this enhancement.
The trial court is directed to re-open the matter for evidence regarding Mr. Futch's post-termination contribution to the production of the renewal commissions for the period August 29, 1988, through April 1992. Additionally, we direct the court to take evidence relating to insurance renewal commissions received by Mr. Futch from April 1992 until the date of the evidentiary hearing on policies in effect during the community. This evidence should include proof of Mr. Futch's post-termination efforts and apportionment between the community's and his separate interest should be made accordingly.
Thereafter, the trial court is directed to require Mr. Futch to file an annual accounting of renewal commissions received on policies in force during the community. Mrs. Futch shall have full access to Mr. Futch's records, as well as those of the insurance agency, to insure accuracy in this annual accounting. The trial court will then apportion the renewal commissions between the community's and Mr. Futch's separate interest. This yearly accounting and apportionment will be required as long as there are policies in effect that were written or serviced by Mr. Futch during the community.[4]

Medical Expenses
The judgment of separation, which was rendered on September 29, 1988, provided in part:
It is further ordered, adjudged and decreed that plaintiff [Thomas Futch] maintain current health, auto and life insurance on defendant [Shellie Futch] that is now in effect; and pay all of defendant's documented medical expenses not covered by the hospitalization policy.
At trial, Shellie Futch introduced evidence reflecting her payment of medical expenses totalling $4,770.95. Between the time of the legal separation and divorce, Shellie Futch underwent elective cosmetic liposuction surgery. The majority of the expenses related to this surgery was not covered by insurance, so she submitted the bills, along with receipts from oral contraceptives, to Thomas Futch, who refused to reimburse her for these expenses. On direct examination, Mrs. Futch asserted that her understanding of the provision in the judgment of separation was that Mr. Futch would be responsible for any and all medical expenses she incurred.
Mr. Futch testified that it was never his intent to bear the responsibility for medical expenses incurred by his former spouse voluntarily, not out of medical necessity. Mr. Futch felt that the medical expenses Mrs. Futch incurred for cosmetic surgery and oral contraceptives were not covered by the provision in the judgment of separation.
*370 Legal agreements such as the judgment of separation have the effect of law upon the parties, who are held to full performance of the obligations undertaken. Courts are bound to give legal effect to all such contracts according to the common intent of the parties. LSA-C.C. Art. 2045; Doyal v. Pickett, 628 So.2d 184 (La.App. 2d Cir.1993); Lindsey v. Poole, 579 So.2d 1145 (La.App. 2d Cir.1991), writ denied, 588 So.2d 100 (La. 1991). This intent is to be discerned from the words in the contract when they are clear and explicit and do not lead to absurd consequences. LSA-C.C. Art. 2046. The words of a contract must be given their generally prevailing meaning. LSA-C.C. Art. 2047.
The parties' intent is to be determined in accordance with the plain, ordinary and popular sense of the language used, and by construing the entirety of the document on a practical, reasonable and fair basis. Lindsey, supra. Intent, which is an issue of fact, is to be inferred from all of the surrounding circumstances. Belle Pass Terminal, Inc. v. Jolin, Inc., 92-1544, 92-1545 (La. App. 1st Cir. 03/11/94), 634 So.2d 466; Borden, Inc. v. Gulf States Utilities Co., 543 So.2d 924 (La.App. 1st Cir.1989), writ denied, 545 So.2d 1041 (La.1989). Where the mutual intention of the parties has not been fairly explicit, the court may consider all pertinent facts and circumstances, including the parties' own conclusions, rather than adhere to a forced meaning of the terms used. Spohrer v. Spohrer, 610 So.2d 849 (La.App. 1st Cir. 1992).
The following is excerpted from the trial court's written reasons for judgment:
In this case, the words "medical expenses" do not, by definition, automatically include costs for cosmetic surgery or contraceptives when such treatment was not undertaken for a medical necessity. Such a conclusion would, in the court's opinion, lead to "absurd consequences."
The language of that provision, read together, indicates that Mr. Futch intended to continue the medical insurance currently in force and to provide basic and necessary medical care.
Accordingly, the court finds that Mr. Futch is not obligated to pay expenses incurred or related to cosmetic surgery or for oral contraceptives.
We find that the trial court did not err in determining, pursuant to the intent of the parties, that "medical expenses" referred to basic and necessary medical care and in rejecting Mrs. Futch's request for reimbursement for the submitted expenses.

Settlement Proceeds
Thomas Futch argues that the trial court erred in calculating his portion of a $175,000 settlement arising out of his wife's 1985 automobile accident. The settlement was a lump sum and was not apportioned. After deduction of attorney fees and other expenses, the amount received by the Futches was $103,539.31. The trial court, based upon the testimony of Thomas Futch and Tommy Johnson, the attorney who represented the Futches in the personal injury lawsuit, awarded Mr. Futch $7,500 for loss of consortium. In determining that $7,500 was adequate to compensate Mr. Futch for his loss, the trial court noted the disparity in loss of consortium awards. This discrepancy, surmised the court, is dependent upon the severity of the injuries suffered and the proven effect upon the marital relationship in each particular case.
Thomas Futch testified that he and his wife did not have sexual relations for seven to eight months after the accident. Additionally, Shellie Futch was unable to return to work following the accident. Mr. Futch was forced to seek treatment from a therapist, but the couple's relationship deteriorated to the point that in September 1988, they physically separated.
The deposition of the Futches' attorney, Tommy Johnson, was introduced into evidence. Mr. Johnson affirmed that the settlement did not involve itemization or valuation of the damages sustained by Mr. and Mrs. Futch. Mr. Johnson noted that Mrs. Futch's medical expenses alone amounted to $30,748.89. According to Mr. Johnson, the bulk of the claim was for Shellie Futch's pain and suffering. When asked his opinion of the value of Mr. Futch's loss of consortium claim, *371 Mr. Johnson refused to answer, noting "I am not a judge, and so I don't get to do that sort of thing."
In assessing damages, much discretion is left to the trier of fact. LSA-C.C. Art. 2324.1; Sledge v. Continental Casualty, 25,770 (La.App. 2d Cir. 06/24/94), 639 So.2d 805. Before an appellate court may disturb an award of damages, the record must clearly establish that the trier of fact abused its broad discretion in making the award based upon the specific injuries and their effect on the particular individual involved. Youn v. Maritime Overseas Corporation, 623 So.2d 1257 (La.1993); Barr v. Smith, 25,432 (La. App. 2d Cir. 01/19/94), 631 So.2d 76.
We find no abuse of the trial court's great discretion in the instant case.

CONCLUSION
For the reasons set forth above, the judgment of the trial court rejecting the claim for reimbursement of medical expenses is AFFIRMED, as is the assessment of Mr. Futch's damages for loss of consortium. We further AFFIRM the trial court's classification of insurance renewal commissions on policies written or serviced by Mr. Futch during the marriage as community property; however, the trial court's valuation of the community's interest in the renewal commissions and apportionment of Mrs. Futch's interest is SET ASIDE and the matter is REMANDED to the trial court for proceedings consistent with this opinion. Costs are assessed equally among the parties.
VICTORY, J., concurs in the result.
NOTES
[1] In conjunction with the judgment of divorce, the parties entered into a partial community property settlement, which exempted the rights of Mrs. Futch to past and future commissions, renewals, bonuses and other entitlements arising out of Mr. Futch's employment with Farm Bureau Insurance Companies.
[2] These medical expenses reflect charges incurred by Mrs. Futch for liposuction surgery and oral contraceptives.
[3] In Williams, the Third Circuit held that an ex-husband's renewal commissions attributable to insurance policies sold during the community but paid after the community's termination were the separate property of Mr. Williams. The court found that the services performed by Mr. Williams during the existence of the community created no vested right in him because of the conditional nature of the renewal premiums. Thus, no property interest was acquired during the community. The court further found that even though the premiums were produced in part by Mr. Williams' labor during the community, Mrs. Williams' interest was so speculative that it had no value. Williams, 590 So.2d at 652. The Williams decision was criticized by Professor Lee Hargrave in Recent Developments in the Law, 1991-1992, Matrimonial Regimes, 53 La.L.Rev. 887 (1993).
[4] We note that Hare does not specifically provide for retention of the court's jurisdiction and an annual accounting and apportionment. However, the broad approach taken by the supreme court in Hare lends credence to this as an alternative. See also Due, 342 So.2d at 166; Webber v. Berry, 609 So.2d 1175, f.n. 2, 1178 (La.App. 2d Cir.1992).