# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### April 2000 Session

## CHRISTOPHER LAMAR WOODS v. ELLIE JOAN WOODS

**Appeal from the Circuit Court for Shelby County**
**No. 146130 R.D.    D'Army Bailey, Judge**

---

### No. W1999-00733-COA-R3-CV - Decided August 22, 2000

---

This appeal arises from a dispute between Plaintiff Christopher Lamar Woods and Defendant Ellie Joan Woods regarding Mr. Woods' financial obligations under the parties' final decree of divorce. The trial court approved the ruling of the arbitrator, which was that Mr. Woods is responsible for the expense of Ms. Woods' "tummy tuck" and breast reduction surgery but is not responsible for the expense of Ms. Woods' Obagi cream treatments, collagen injections, lip implants, and other topical procedures. For the reasons set forth below, we affirm the ruling of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S. and HEWITT P. TOMLIN, SP. J., joined.

Daniel Loyd Taylor and John N. Bean, Memphis, Tennessee, for the appellant, Christopher Lamar Woods.

Kay Farese Turner and William E. Miller, Memphis, Tennessee, for the appellee, Ellie Joan Woods.

### OPINION

The parties' final decree of divorce, which was entered by consent in September of 1996, states that "Husband shall be responsible for all uncovered medical bills, deductibles and dental bills. Husband further agrees to be responsible for Wife's uncovered psychological bills up to one (1) visit per week." Subsequent to the parties' divorce, Ms. Woods underwent several procedures, including a "tummy tuck," a breast reduction, Obagi cream treatments, collagen injections, lip implants, and other topical procedures. In March of 1997, Ms. Woods filed a petition alleging that Mr. Woods was in contempt of the parties' divorce decree because he had failed to pay or reimburse her for the expense of the aforementioned procedures. In his response to this petition, Mr. Woods took the position that, because these procedures were purely cosmetic, he was not required by the divorce

decree to pay for them. The parties agreed to have the matter heard by an arbitrator, that the trial shall be conducted pursuant to the Tennessee Rules of Civil Procedure rather than the Uniform Rules of Arbitration, and that the decision of the arbitrator would be incorporated into their final decree of divorce. After a hearing on the matter, the arbitrator ruled that, because the parties' divorce decree did not exclude payment for elective or cosmetic surgery, Mr. Woods is responsible for the expense of Ms. Woods' "tummy tuck" and breast reduction surgery. The arbitrator further ruled, however, that because Ms. Woods' Obagi cream treatments, collagen injections, lip implants, and other topical procedures were not "medical" as that term is used in the divorce decree, Mr. Woods is not responsible for the expense of these procedures. The trial court entered an order on March 3, 1999 approving the ruling of the arbitrator. This appeal by Mr. Woods followed.

The sole issue raised by Mr. Woods on appeal is whether the arbitrator erred in ruling that, pursuant to the parties' final decree of divorce, Mr. Woods is responsible for the expense of Ms. Woods' "tummy tuck" and breast reduction surgery. To the extent that this issue involves questions of fact, our review of the trial court's ruling is *de novo* with a presumption of correctness and thus we may not reverse the court's factual findings unless they are contrary to the preponderance of the evidence. *See, e.g., Randolph v. Randolph*, 937 S.W.2d 815, 819 (Tenn. 1996); T.R.A.P. 13(d). With respect to the court's legal conclusions, however, our review is *de novo* with no presumption of correctness. *See, e.g., Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen and Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999); T.R.A.P. 13(d).

In order to review the ruling of the trial court, we must determine whether the arbitrator properly interpreted or construed the parties' divorce decree. The rules of construction relative to divorce decrees are set forth in *Hale v. Hale*, 838 S.W.2d 206 (Tenn. Ct. App. 1992), as follows:

> A divorce decree is to be construed like other written instruments. *See Branch v. Branch*, 35 Tenn. App. 552, 249 S.W.2d 581 (1952). A decree must be construed in light of the pleadings, particularly the prayer of the bill and the apparent purposes in the minds of the draftsman and the court. *Livingston v. Livingston*, 58 Tenn. App. 271, 429 S.W.2d 452, 456 (1967). The general rules of evidence regarding the admission of parol evidence and the construction of written instruments also apply to the admission of parol evidence in the construction of a divorce decree. 429 S.W.2d at 456, 457. The test as to the application of the parol evidence rule is whether the testimony as to oral agreements or negotiations varies or contradicts the instrument in question or merely explains it. 429 S.W.2d at 457, citing *Marron v. Scarbrough*, 44 Tenn. App. 414, 451, 314 S.W.2d 165 (1958).

*Hale*, 838 S.W.2d at 208-09. Mr. Woods argues on appeal that the phrase "all uncovered medical bills" in the parties' divorce decree refers only to bills not covered by insurance that are associated with necessary medical procedures and does not include those uncovered bills that are the result of unnecessary medical procedures such as elective plastic or cosmetic surgery. Ms. Woods contends, however, that the phrase "all uncovered medical bills" refers to all medical bills

not covered by insurance, regardless of whether the underlying medical procedure is necessary or unnecessary.

Although there are no opinions of the Tennessee courts addressing the specific issue raised in the case at bar, there are cases from other jurisdictions that address this issue. In support of her position, Ms. Woods cites *Stack v. Stack*, 646 So. 2d 51 (Ala. Civ. App. 1994). In *Stack*, the parties' divorce decree required the father to maintain health insurance for the parties' children and to pay one-half of the children's medical and dental expenses not covered by insurance. *See id.* at 53. The mother subsequently filed a petition seeking payment by the father for one-half of certain uncovered medical and dental expenses that had been incurred by the children. *See id.* In his answer to the petition, the father maintained that he did not pay his portion of the children's uncovered dental bills because he considered this dental work to be cosmetic and unnecessary and because the mother had failed to file insurance claims with respect to some of these bills. *See id.* at 56. The trial court rejected this argument and held the father in contempt of court. *See id.* at 54, 56. The Alabama Court of Civil Appeals affirmed, stating "we cannot hold that the trial court abused its discretion or that the trial court's judgment was plainly and palpably wrong." *Id.* at 56.

In support of his position, Mr. Woods relies on the cases of *Hill v. Hill*, 706 So. 2d 406 (Fla. Dist. Ct. App. 1998), and *Futch v. Futch*, 643 So. 2d 364 (La. Ct. App. 1994). In *Hill*, the parties' final decree of divorce stated that "[t]he parties shall divide evenly any uncovered expenses not covered [by the children's health insurance] as an additional form of child support." *Hill*, 706 So. 2d at 407. The father challenged this provision, arguing that it imposes an open-ended and unlimited financial liability on him and is therefore unenforceable. *See id.* The Florida District Court of Appeals agreed that the aforementioned provision was too open-ended and consequently modified the parties' divorce decree to reflect that this provision applies only to non-elective reasonable and necessary medical expenses. *See id.* Similarly, in *Futch*, the trial court entered an order of separation stating that husband shall "pay all of [wife's] documented medical expenses not covered by the hospitalization policy." *Futch*, 643 So. 2d at 369. The wife subsequently filed a petition against the husband seeking payment of certain medical expenses incurred for cosmetic liposuction surgery and oral contraceptives. *See id.* at 366-67. The trial court rejected the wife's request for payment of these expenses, holding as follows:

> In this case, the words "medical expenses" do not, by definition, automatically include costs for cosmetic surgery or contraceptives when such treatment was not undertaken for a medical necessity. Such a conclusion would, in the court's opinion, lead to "absurd consequences." The language of that provision, read together, indicates that Mr. Futch intended to continue the medical insurance currently in force and to provide basic and necessary medical care. Accordingly, the court finds that Mr. Futch is not obligated to pay expenses incurred or related to cosmetic surgery or for oral contraceptives.

*Id.* at 370. The Louisiana Court of Appeals affirmed the ruling of the trial court. *See id.*

Under Tennessee law, there are certain implied terms that may be read into any contract or written instrument. First, it is well settled that every contract contains an implied duty of good faith and fair dealing in the performance and enforcement of the contract. *See Wallace v. National Bank of Commerce*, 938 S.W.2d 684, 686 (Tenn. 1996); *Brooks v. Networks of Chattanooga, Inc.*, 946 S.W.2d 321, 326 (Tenn. Ct. App. 1996); *ACG, Inc. v. Southeast Elevator, Inc.*, 912 S.W.2d 163, 168 (Tenn. Ct. App. 1995); *Winfree v. Educators Credit Union*, 900 S.W.2d 285, 289 (Tenn. Ct. App. 1995). When considering whether the parties have complied with this duty of good faith and fair dealing, the court must ascertain the intention of the parties as determined by a reasonable and fair construction of the language of the contract. *See Wallace*, 938 S.W.2d at 686; *ACG, Inc.*, 912 S.W.2d at 168. Additionally, a qualifying word that may be read into every contract is the word "reasonable" or its equivalent "reasonably." *See Hurley v. Tennessee Farmers Mut. Ins. Co.*, 922 S.W.2d 887, 892 (Tenn. Ct. App. 1995); *Moore v. Moore*, 603 S.W.2d 736, 739 (Tenn. Ct. App. 1980).

In light of the authorities cited above, we think that the disputed provision in the parties' final decree of divorce should be read as "Husband shall be responsible for all *reasonable* uncovered medical bills, deductibles and dental bills." Under this reading of the divorce decree, Mr. Woods is required to pay for the uncovered medical expenses incurred by Ms. Woods only if the underlying procedure is both "reasonable" and "medical."[1] The trial court found that Ms. Woods' Obagi cream treatments, collagen injections, lip implants, and other topical procedures were not "medical." We agree. We further agree that Ms. Woods' "tummy tuck" and breast reduction surgery were "medical" procedures within the meaning of the parties' divorce decree. The question, then, becomes whether Ms. Woods' "tummy tuck" and breast reduction surgery were also "reasonable." As a general rule, we think "reasonable" medical expenses would not include those associated with cosmetic surgery obtained solely for the purpose of improving one's appearance and not because of a medical necessity.[2] It would certainly not be "reasonable" to construe the parties' divorce decree in such a way that Mr. Woods is required to pay for an unlimited number of cosmetic and unnecessary medical procedures obtained at the whim of Ms. Woods and for no other purpose than to improve Ms. Woods' appearance. Like the Louisiana court in *Futch*, we think that such a construction would lead to "absurd consequences." In the instant case, Dr. Robin M. Stevenson, Ms. Woods' plastic surgeon, testified that Ms. Woods had sustained a prior injury to her arm that made it difficult for Ms. Woods to take care of herself. (Tr. Exhibit #4, at 22). Dr. Stevenson further explained that Ms. Woods' large heavy breasts and pendulous abdomen aggravated this problem, resulted in neck, shoulder, and back pain, and caused Ms. Wood to develop rashes beneath each breast and deep grooves in her shoulders from

---

[1] Our interpretation of the parties' divorce decree is somewhat different from the construction given to the decree by the arbitrator. The arbitrator ruled that Mr. Woods is required to pay for all uncovered expenses resulting from procedures that are "medical" and did not distinguish between procedures that are "reasonable" and those that are "unreasonable." Under our ruling, however, the procedure must not only be "medical" but must also be "reasonable" in order to come within the scope of the divorce decree.

[2] We certainly do not intend to suggest that all cosmetic surgery is unreasonable. For example, the purpose of cosmetic surgery to correct a birth defect or a physical injury is to improve the patient's appearance. Under such circumstances, however, the procedure would be medically necessary and thus would be "reasonable."

bra straps. According to Dr. Stevenson, Ms. Woods' "tummy tuck" and breast reduction surgery were necessary in order to alleviate the aforementioned pain, rashes, and grooves and to enable Ms. Woods to more easily care for herself. Mr. Woods did not offer any medical testimony contradicting this opinion of Dr. Stevenson. Thus, the evidence at trial supports the conclusion that the purpose of Ms. Woods' "tummy tuck" and breast reduction surgery was not simply to enhance Ms. Woods' appearance and that there was at least some decree of medical necessity associated with these procedures. We therefore conclude, although for different reasons,[3] that the arbitrator properly held that Mr. Woods is obligated under the parties' divorce decree to pay the uncovered expense associated with these procedures. Thus, we affirm the trial court's approval of the arbitrator's ruling.

Based on the foregoing, the ruling of the trial court is affirmed. The costs of this appeal are assessed to Christopher Lamar Woods, and his surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE

---

[3] An appellate court can affirm the ruling of a lower court even if it disagrees with the reasoning of the lower court so long as the ultimate conclusion of the lower court is the same as the conclusion reached on appeal. *See, e.g., State v. Rogers*, 992 S.W.2d 393, 395 (Tenn. 1999)(providing example of case in which appellate court affirmed ruling of the lower court on other grounds).