NASHVILLE LIFE INS. CO., *v.* MATHEWS AND WIFE.

1. PLEADING AND PRACTICE. *Declaration. Effect of a verdict.* An imper-
fect statement of a cause of action in a declaration, such as the fail-
ure to allege a special demand necessary to the recovery, or to aver
the time of breach, will be cured by verdict.

2. LIFE INSURANCE. *Contract. Measure of damages.* The contract of life
insurance is based upon statistics, and subject to settled rules which
admit of being worked out with mathematical accuracy, and the
damages resulting from a breach thereof by the insurer, admit of
being ascertained with precision.

3. SAME. *Premium. Reserve fund.* A part of every premium paid on a life
policy is absorbed in the expenses of the business; a part is earned by
the insurer in carrying the risk during the period for which it is
paid, to be used in the payment of losses on other policies or di-
vided as profits, and the remainder is accumulated on interest as a
reserved fund to respond to the demand of the particular policy,
and constitutes its equitable value.

4. SAME. *Contract. Damages. Reserve fund.* In an action upon a mu-
tual or participating life policy to recover damages for the breach of
a stipulation that it is non-forfeiting, if application is made for a set-
tlement while the policy is in force, and after three annual pre-
miums have been paid, it is error to charge the jury that the reserved
fund would not control in fixing an equitable settlement, and that
the ability or inability of the company to pay, could not be looked to.

5. SAME. *Value of paid up policy.* A holder of a participating policy is not entitled to recover more than his fair proportion of the reserved fund, or the value of a paid up policy which the proportion will buy, but the presumption in the case of a company in active business would be that it had ready the full share of the policy holder.

6. SAME. *Evidence, parol. Statement of agent.* Parol testimony is not admissible to explain a written contract, and it was therefore error, in an action for the breach of the non-forfeiting clause of a policy of life insurance, to admit oral evidence that, at the time of taking out the policy, the plaintiff enquired of the agent of the company the meaning of the clause, and was informed that he would receive a paid up policy for the full amount of the money paid by him, and to charge the jury, if they found the facts that way, that the company should have given such a paid up policy, and they should render a verdict for the value of such a policy.

## FROM DAVIDSON.

Appeal in error from the Circuit Court of David-son county. N. BAXTER, J.

THRUSTON & BRADFORD for Ins. Co.

J. D. BRIEN for Mathews and wife.

COOPER, J., delivered the opinion of the court.

On July 15, 1868, the Nashville Life Insurance Company issued to Alexander Mathews and Martha A., his wife, a policy of insurance, upon the plan of permitting the assured to participate in the profits, on their joint lives for the sum of $2,000, payable to the survivor upon the death of either, in consideration of $51.55 in cash paid quarterly in advance. One of the persons insured was then aged 53 years, and the other 60 years. The assured paid the premiums for one year in money, after which time they were permitted

to pay $34.55 of each quarterly premium, and to re-
tain the residue in the form of a loan, the interest
being payable quarterly in advance.	Under this ar-
rangement, the premiums continued to be paid up to
the 15th of April, 1875, inclusive.	The cash pay-
ments at that time amounted to $1145.15, including
interest on the loans, and the loan aggregated $319.45.
The dividends made to the assured during the time
were in all $94.62.	The policy contained the follow-
ing condition: "This policy is non-forfeiting, if ap-
plication for settlement is made while it is in force,
and after three annual premiums have been paid."
While the policy was still in force, Mathews applied
for a settlement under this provision.	The company in
reply offered a paid up policy of $540, subject to the
outstanding note on loan of $319.45, and the payment
of interest thereon annually in advance.	The net
amount due on the policy, or its equitable value was,
therefore, $220.55.	The proposition. not being satis-
factory, this suit was brought on September 1, 1875,
by Mathews and wife against the company.	The jury
found a verdict in favor of the plaintiff for $988.50,
with interest from the time of the demand for a set-
tlement.	Motions for a new trial, and in arrest of
judgment were overruled, and the company appealed in
error.	The court, however, required the recovery to
be reduced to $750.

The declaration contained two counts, one on the
policy, and the other for money received.	The first
count made profert of the policy, but set out no stip-
ulation on the part of the company except the non-

forfeiting clause above quoted, and averred that the plaintiffs had performed their part of the contract, but that the defendant refused, and still refuses to do so. This count is, it must be admitted, meagre in its averments, for it neither avers an application for a settlement nor that it was made during the life of the policy, and the defendant below has some ground for insisting that the motion in arrest of judgment should have been sustained. The rule always has been in this State that an imperfect statement of a cause of action in a declaration is cured by verdict: *Anderson* v. *Read,* 2 Tenn., 205. And the rule applies when the imperfection consists in the failure to allege a special demand which was a condition to the right of recovery, or to aver the time when the breach occurred: *Rodgers* v. *Love,* 2 Hum., 417; *Shelby* v. *Hearne,* 6 Yerg., 512; *Read* v. *Memphis Gayoso Gas Co.,* 9 Heisk., 545. The only breach which could possibly be embraced in the declaration was the refusal to settle, and there could have been no recovery except upon proof that an application for a settlement was made while the policy was in force. The bill of exceptions shows that the proof was made.

The parties themselves, in their negotiations for a settlement, and again on the trial, practically construed the clause of the policy sued on as entitling the assured, under the circumstances of the case, to a paid up policy. The contest was over the value of the policy to which they were entitled. The plaintiffs proved the application for a settlement, and the reply of the company. They introduced no testimony to es-

tablish the actual amount of the paid up policy to which they supposed themselves entitled, nor, of course, its value. The company produced the testimony of experts to explain the operations of a life insurance company, upon the plan disclosed by the plaintiffs' policy, and to show, upon the data of the policy, the payments made thereon, and the time it had run, the reserve fund of the policy at the date of the application, according to the insurance laws of this State. This testimony tended to show that the reserve fund was $474, that large and prosperous companies could afford to pay to withdrawing policy holders three-quarters of the reserve fund, and small and struggling companies about twenty-five per centum; and the defendant, the Nashville Insurance Company, could not, with safety to its other policy holders, afford to pay two-thirds of the reserve fund.

The court charged the jury, in substance, on this point of the case, that they might find what sum in cash, under all the facts and ctrcumstances, was a just and reasonable settlement at the time of the application, with interest, if they saw proper to give interest; that the facts to be looked to in ascertaining the sum would not be the ability or inability of the company to pay, but the age of the parties assured, their health and likelihood of life (for which purpose the jury might refer to the established tables of the probable duration of life), the amount of premiums paid, and the risk run in the intervening time; that whatever this company, or other companies, might set apart as what was called a reserved fund, to meet the risk on

the life of the assured, would not control the jury in
fixing an equitable settlement; and that each case
should stand upon, and be governed by its own facts.

It was settled at an early day in this State, and
has been since adhered to, that damages for the breach
of contract can only be such as are incidental to, and
directly caused by the breach, and may be reasonably
supposed to have entered into the contemplation of the
parties; not speculative, accidental or remotely conse-
quential damages. The contract itself must give the
measure of damages, and, if it fails to do so, the dam-
ages can only be nominal: *Hendrick* v. *Stewart*, 1
Tenn., 476; *State* v. *Ward*, 9 Heisk., 100, 132; *Fos-
ter* v. *Water Company*, 3 Lea, 46; *Winters* v. *Fleece*,
4 Lea, 551. The contract of life insurance is, more
than most contracts, based upon statistics, and gov-
erned by general rules which admit of being worked
out with mathematical accuracy. A person insured,
especially upon a mutual or participating plan, does
not stand alone, but is one of a large number of per-
sons in a common venture, whose case cannot be treated
as one to be governed by its own facts. He must
be content to bear his share of the joint risk or bur-
den. The annual premiums of a life policy are not
the consideration for the insurance for the particular
year, but the graduated rate for the entire duration of
the policy. The price of a new policy increases as
the individual advances in years, and the difference be-
tween the average at one age and the average at an-
other age constitutes the equitable value of the earlier
policy. If the company has been properly managed,

it will have laid up a reserved fund equal to the equitable value, to be appropriated to the payment of the policy when it falls due.    It is this equitable value that the companies agree to pay in settlement during the life of the policy: *Cohen's case*, 50 N. Y., 610; *New York Life Ins. Co.*, v. *Statham*, 93 U. S., 24.

A part of each premium paid on a life policy is absorbed in paying the running expenses of the company.    Another part compensates the insurer for the risk during the period for which the premium is paid. It constitutes a fund for the payment of losses on other policies, and a portion of it may be returned to the holder of a mutual or participating policy in the shape of dividends.    Another part of each premium is retained by the insurer, accumulating on interest, to respond to the demand of the policy when it matures or becomes a claim.    The proportion of the premium required for this purpose is fixed approximately by calculation, and at any period between the issuance of the policy and its maturity, ought to pay the additional cost of taking out a new policy at the highest rate the assured would be required to pay by reason of his advance in years:   *In re Albert Life Ins. Co.*, L. R., 9 Eq., 706; *Holdrich's case*, L. R., 14 Eq., 72; *Smith* v. *St. Louis Mutual Life Ins. Co.*, 2 Tenn. Ch., 741.    The fund thus obtained is called the reserve, and constitutes, if the company has been well managed, the equitable value of the policy.    It is now regulated in this State by the act of 1877, ch. 108, which provides:   "That every company doing a life insurance business in Tennessee, whether chartered by the

laws of Tennessee, or any other foreign state or government, shall be required, for the protection of its policy holders, to keep invested, at all times, a sum sufficient to re-insure all outstanding risks, calculated upon the American experience table of mortality at four and one-half per cent. on mutual or participating policies, and at six per cent. on stock or non-participating policies, which amount shall be invested in bonds, securities or mortgages (if mortgages, on real estate worth double the sum loaned), to be certified as safe and worth this amount by the insurance commissioners of the State in which the company was organized."

It is obvious from this view of the nature of the contract of life insurance, and the settled law of this State in regard to the measure of damages on breaches of contract, that his Honor was in error in limiting the jury, in ascertaining the sum to which the plaintiffs might be entitled, to the facts enumerated by him, and withdrawing from their consideration the reserved fund of the policy sued on, and the financial ability or standing of the company. The reserve constitutes, as we have seen, the equitable value of the policy. And the plaintiffs, by their participating policy, became *quasi partners* in the company, and could not demand more than their fair proportion of the reserved fund. The presumption in the case of a company in active business—a "going company" to use the words of an eminent English judge—would be that the reserve had been properly managed, and that the company had on hand, ready to meet the demand, the full share of each policy holder. The burden of proof would be on the

company to show the contrary. The assured would, upon application under the stipulation sued on in this case, be entitled to a paid up policy for such an amount as could be purchased by the reserve, or so much thereof as the assured could justly claim. It was so held by this court, where the policy was put an end to by the late war, in *Crawford* v. *Ætna Ins. Co.*, 5 Cent. L. J., 100, an opinion delivered by judge Turney. The recovery in an action at law for the breach of the contract in failing to deliver the policy, would be its money value at the time of breach, with interest, if the jury see proper to give interest. The indebtedness of the assured to the company for unpaid premiums would be deducted from the value found.

It will be seen that, inasmuch as a part of each premium paid was necessarily consumed in the expenses of the company, and another part in meeting the losses on other policies and in dividends, it would be manifestly unjust to allow the policy holder to recover the value of a paid up policy for the entire amount of the premiums paid. And yet that was the contention of the plaintiffs in this case, and one of them was permitted, over the objection of the defendant, to prove that when the policy was taken out the secretary and a soliciting agent of the company told him, that at any time, when he stopped paying the premiums, the company would give the plaintiffs a paid up policy for the amount they had paid in. The trial judge charged the jury on this point as follows: "If you find that, at the time of the taking out of the policy, the plaintiff enquired of the agent of the com-

pany in procuring contracts of insurance, what was the meaning of the non-forfeiting clause, and was informed that he would receive a paid up policy for the full amount of the money paid by him, payable at the death of the assured, or either of them, then the company should have given such a paid up policy, and the jury should give a verdict for what such a paid up policy was worth at the time of the settlement."

If the evidence objected to was competent, and the charge of the court thereon correct, and the legal meaning of the non-forfeiting clause was different, the terms of the written contract would be changed by parol, and by the declarations of the agent of the company. One of the conditions on the policy is: "Agents are not authorized to make, alter, or discharge contracts, * * their duties being simply the reception and trasmission of applications for policies and premiums, under the rules and instructions laid down in their letters of appointment." The company reserves the power of making its own contracts.

His Honor, the trial judge, thought that if the meaning of the clause of the policy under consideration was doubtful, the agent in procuring the policy might explain to the parties the meaning of the clause, and how it was construed by the company. In this we think his Honor erred. No principle is better settled, or has been more rigorously adhered to in this State, than that a written contract cannot be changed by parol testimony, except in a direct suit to reform it. Parol evidence is admissible to apply, but not to explain the terms of a written instrument: *Snodgrass* v.

*Ward,* 3 Hayw., 40.    The court, whose duty it is to construe contracts in writing, while excluding parol evidence from the jury, may hear any testimony which may enable it to place itself in the situation of the parties, and apply their language: *Mills* v. *Jarvis,* 12 Heisk., 451. 463; *Chaffin* v. *Gullet,* 2 Sneed, 275; *Gannaway* v. *Tarpley,* 1 Cold., 572.    The testimony is admissible in the case of a latent ambiguity, but it merely applies without altering: *Mumford* v. *Railroad,* 2 Lea, 393, 398.    The rule is general that where the intention of the parties is ambiguously expressed, creating a patent ambiguity, parol evidence is not admissible: 2 Greenl. Ev., sec. 297; *Bridges* v. *Robinson,* 2 Tenn. Ch., 720; *Myers* v. *Lindsay,* 5 Lea, 331. In the case before us, both parties agreed as to the meaning of the contract, that the plaintiffs, upon application for a settlement, was entitled to a paid up policy, and the amount of the policy was fixed by the nature of the contract.    If there was any ambiguity in the language, it was patent, and could not be explained by parol evidence.

For these errors, the judgment must be reversed, and the cause remanded for another trial.