IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 2000 Session

## TALISA GAYLE HOWELL v. GARY MORRIS HOWELL

**Appeal from the Chancery Court for Maury County**
**No. 93-292     John A. Turnbull, Chancellor, By Designation**

---

**No. M1999-00753-COA-R3-CV - Filed July 31, 2000**

---

In this post-divorce case, Talisa Gayle Kelly, formerly Howell, ("Wife") filed a petition seeking to increase child support and to enforce other provisions of the judgment of divorce.[1] The trial court ordered Gary Morris Howell ("Husband") to pay Wife the balance due her for her interest in the former marital residence. It further found Husband in contempt for failing to maintain a life insurance policy for the benefit of the parties' minor child and ordered him to pay Wife an amount approximating what he would have paid in insurance premiums had he maintained the policy as required by the divorce judgment. Wife was also awarded half of her attorney's fees. We reverse the trial court's award of the unpaid premiums; in all other respects, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed in Part;**
**Affirmed in Part; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

Delilah A. Speed, Columbia, Tennessee, for the appellant, Gary Morris Howell.

Thomas F. Mink, II, Lawrenceburg, Tennessee, for the appellee, Talisa Gayle Kelley.

**OPINION**

On this appeal, Husband raises three issues for our consideration:

---

[1]Wife's request for an increase in child support was denied by the trial court. That ruling is not at issue on this appeal.

1. Did the trial court err in holding that the divorce judgment obligated Husband to reimburse Wife for taxes paid and in ruling that the $5,000 paid by Husband to Wife was for those taxes rather than for Wife's interest in the marital home?

2. Did the trial court err in holding Husband in willful contempt concerning the insurance policy and granting judgment to Wife for the amount of the unpaid premiums?

3. Did the trial court err in ordering Husband to pay half of Wife's attorney's fees?

## I. *Facts*

On May 24, 1993, Wife filed her complaint for divorce. That same day, the parties' marriage was dissolved by the entry of a final judgment of divorce. Both the complaint and the judgment were drafted by Husband, who is a licensed attorney, after consultation with Wife. The judgment embodies the parties' agreement on all matters at issue. Pursuant to the parties' agreement, Wife received custody of the parties' then-minor child, Ashley Scott Howell (DOB: March 19, 1981), and Husband was obligated to pay child support. The other provisions of the judgment that are pertinent to this appeal are as follows:

> That [Husband] shall be awarded the marital home. The parties agree that the property is to be appraised by Paul Boehms. [Husband] *will pay to [Wife] one-half of the amount by which the appraisal exceeds Seventy-Nine Thousand Dollars ($79,000.00).*[2]
>
> *       *       *
>
> That [Husband] shall maintain his present life insurance coverage with Life [Insurance Company] of Georgia, and [Wife] shall remain beneficiary as Trustee for the minor child, until said child turns eighteen (18) years of age, or twenty-two (22) if a full-time student.
>
> *       *       *
>
> That [Husband] shall pay all income taxes owed by the parties for the years 1991 and 1992 and hold [Wife] harmless therefrom.

(Emphasis added).

---

[2] It was later determined that, pursuant to this provision, Wife is entitled to $7,250 for her interest in the marital residence.

Wife filed the subject petition in June, 1996, alleging, *inter alia*, that Husband had failed to pay her for her interest in the marital residence and had failed to pay all of the taxes owed for the years 1991 and 1992. The evidence presented at trial established the following facts regarding these allegations. Prior to the divorce, each of the parties was awarded damages arising out of the personal injuries sustained by Wife in an automobile accident. Wife was awarded $70,000 for her injuries, and Husband was awarded $5,000 for loss of consortium. In April 1993, the Internal Revenue Service seized Husband's $5,000 award and $27,005.46 of Wife's award for back taxes owed by the parties for the years 1988 to 1992. The parties' tax liability for the years 1988 to 1990 -- being $27,026.56 -- was fully paid as a result of the government's execution. A portion of the 1991 taxes, totaling $4,978.90, was also satisfied by this seizure. The portion applicable to 1991 taxes was satisfied totally out of Wife's award.

After the parties were divorced, Husband made three payments to Wife. The parties agree that two of these payments, totaling $1,150, should be applied toward Husband's obligation to Wife on the marital residence. The parties dispute, however, the purpose of the third payment of $5,000. Wife testified that it was to partially reimburse her for the taxes paid out of her personal injury award. She testified that the parties had discussed the repayment of this money while preparing the divorce decree:

> Q.     Can you tell the Court how the divorce decree and the divorce complaint came to be filed on the same date?
>
> A.     We was in his office and I was typing it. He was standing behind me. He told me exactly what to type. When it came to the part about income taxes, I asked him, sitting right there in his office, what I was supposed to do about the money they had took from me for the Property Settlement Agreement. And he did not want me to embarrass him in the Court so he told me, he said, "Talisa, I have never done you wrong and I won't do you wrong now. I will pay you that money back."
>
> Q.     Did he say anything specifically about being embarrassed to put something like that in the decree?
>
> A.     Yeah, he did not want me to put that in the decree, so I trusted him when he told me he would pay me back.
>
> *     *     *
>
> Q.     Did you ever have any conversations with [Husband]...about him paying that back or how it was going to be paid?
>
> A.     Only when brought me the $5,000.

Q. Tell the Court what was said on that date.

A. He brought me the money. It was cash money. It was in a bank envelope. He gave me the money and he told me that this was the money towards the money that he owed me, that they took from me to pay his taxes. Because that money was not given to me to pay his taxes, it was given to me because I was hurt. And he said he would repay me that. So he gave me that $5,000 and told me he would pay me back the rest of it when he got it.

Husband testified, on the other hand, that the $5,000 payment was intended to partially reimburse Wife for her interest in the marital residence:

Q. Isn't it a fact that when you all were working on this decree, you told her -- she asked -- she said, "Gary, what about the money you owe me, the $27,000 for these back taxes?" Don't you... remember her asking you about that?

A. It was after the decree.

Q. And do you remember saying, "Talisa, I've never treated you wrong and I'll take care of it."

A. What I told her was -- after the decree was entered she came back and wanted to amend the decree and put that in. I told her I wouldn't agree to that, but if I ever got what I call a big lick, large fee in, and was able to do it I'd try to pay her back some of the money.

Q. So you knew you owed her money that was seized?

A. No. I didn't say I knew I owed her anything. I told her if I ever got a big fee in I would try to pay back some of that money.

Q. As a matter of fact, you paid her 5,000 of that, didn't you?

A. I paid her 5,000 on the house.

Wife also alleged in her petition that Husband had failed to maintain insurance coverage as required by the judgment. The evidence presented at trial established that at the time of the divorce in May, 1993, Husband had a universal life insurance policy through Life Insurance Company of Georgia that designated Wife as beneficiary for the benefit of Ashley. This policy lapsed in September, 1993. For the next 22 months, Husband did not carry any life insurance. In July 1995,

Husband obtained a $250,000 term life policy from Life Insurance Company of Georgia, again designating Wife as beneficiary for Ashley. This policy lapsed in September, 1997.

Husband testified that in December, 1997, he applied for a $500,000 policy from the MONY Life Insurance Company of America with the intention of naming both Wife and his present wife, Roxanne, as beneficiaries, thereby eliminating the need to carry two separate life insurance policies. Husband had previously obtained a $250,000 term life insurance policy from the Valley Forge Life Insurance Company designating Roxanne as beneficiary. The MONY Life Insurance Company rejected his request for $500,000 coverage, however, and he was issued only $100,000 in coverage. He testified that he decided to designate Roxanne as beneficiary on the $100,000 MONY policy and to change the beneficiary on the $250,000 Valley Forge policy from Roxanne to Wife as trustee for Ashley, so as to comply with the divorce judgment. However, the beneficiary on the latter policy was not changed at that time. Husband testified that he thought the beneficiary had been changed, and he was not aware that it had not until July, 1999. Wife, as trustee for Ashley, was finally designated as the beneficiary on the $250,000 Valley Forge policy on July 26, 1999, the day before the hearing on the subject petition.

## II. *Trial Court's Findings*

In regard to the issue of income taxes, the trial court construed the divorce judgment as requiring Husband to pay the entire amount of taxes that the parties owed for the years 1991 and 1992 and to hold Wife harmless therefrom. The court determined that the $5,000 payment to Wife was to reimburse her for the $4,978.90 from her personal injury judgment that had been levied upon to pay a portion of the 1991 taxes. The court rejected Husband's contention that the $5,000 payment had been for Wife's interest in the marital residence, noting that on this issue, the court found Wife's testimony more credible than Husband's. The court concluded that Husband had fully satisfied the income tax provision of the divorce judgment and had no further obligations to reimburse Wife for the monies paid out of her award for the 1988-1991 taxes. In regard to Wife's interest in the marital residence, the court found that Husband had paid $1,150 of the total $7,250 owed. The court calculated that Husband still owed Wife $6,100, which, with prejudgment interest, amounted to $8,300.57. After decreeing to Wife the funds that Husband had placed in escrow with the Clerk and Master, the court concluded that the balance due Wife for her interest in the marital home was $6,841.27.

On the issue of life insurance, the court found that Husband had allowed the policy to lapse for a total of 44 months between the time of the divorce and the subject hearing. Finding that the insurance required by the divorce judgment "was in the nature of child support," the court found Husband in contempt for failing to maintain the insurance policy. It ordered him to pay $3,942.84 to Wife within six months of the entry of the order in order to purge himself of the contempt.[3] The court ordered Husband to maintain life insurance for the benefit of Ashley, and Wife was ordered

_____

[3] The court calculated this award by multiplying the monthly premium for the term life insurance policy currently carried by Husband ($89.61) by the number of months that he was not in compliance (44).

to assist Ashley in providing proof that he is a full-time student at the beginning of each quarter or semester. Finally, upon considering "the relative financial condition of the parties, the nature of the case, and the outcome of the case," the court awarded Wife $3,102.85 for discretionary costs and one-half of her attorney's fees.

### III. *Standard of Review*

In this non-jury case, our review is *de novo* upon the record of the proceedings below. Tenn. R. App. P. 13(d). The record comes to use with a presumption of correctness as to the trial court's factual findings -- a presumption that we must honor "unless the preponderance of the evidence is otherwise." **Id.** The presumption of correctness, however, does not extend to the trial court's conclusions of law. **Campbell v. Florida Steel Corp.,** 919 S.W.2d 26, 35 (Tenn. 1996).

### IV. *Analysis*

Husband's first issue on appeal concerns the interpretation of the provision in the divorce judgment by which Husband agreed to "pay all income taxes owed by the parties for the years 1991 and 1992 and hold [Wife] harmless therefrom." The trial court interpreted this provision as requiring Husband to reimburse Wife for the $4,978.90 from her personal injury award that was applied toward the parties' 1991 tax liability. Husband argues that the judgment obligates him to pay only the taxes owed at the time that the judgment was entered, and therefore does not require him to reimburse Wife for the portion of the 1991 taxes that she paid prior to the entry of the judgment.

A divorce judgment incorporating the parties' settlement agreement is to be construed like any other written instrument. *See **Hale v. Hale,*** 838 S.W.2d 206, 208 (Tenn. Ct. App. 1992); ***Livingston v. Livingston,*** 58 Tenn. App. 271, 429 S.W.2d 452, 456 (1967). "The cardinal rule for interpretation of contracts is to ascertain the intention of the parties from the contract as a whole and to give effect to that intention consistent with legal principles." ***Gray v. Estate of Gray,*** 993 S.W.2d 59, 64 (Tenn. Ct. App. 1998). The words expressing the intent of the parties should be given their "usual, natural, and ordinary meaning." ***Bradson Mercantile, Inc. v. Crabtree,*** 1 S.W.3d 648, 652 (Tenn. Ct. App. 1999). Absent fraud or mistake, courts must construe contracts as written. ***Realty Shop, Inc. v. RR Westminster Holding, Inc.,*** 7 S.W.3d 581, 597 (Tenn. Ct. App. 1999). Interpretation of a contract, being a question of law, is subject to *de novo* review with no presumption of correctness. ***Guiliano v. Cleo, Inc.,*** 995 S.W.2d 88, 95 (Tenn. 1999); Tenn. R. App. P. 13(d).

With the foregoing principles in mind, we turn to the provision at issue. We agree with the trial court that the provision requiring Husband to "pay all income taxes owed by the parties for the years 1991 and 1992 and hold [Wife] harmless therefrom" obligates Husband to pay *all* of the income taxes owed for those two years. Hence, Husband is obligated, by the unequivocal language of the judgment, to reimburse Wife for the amount of her award levied upon to satisfy a portion of the 1991 taxes. *See **Pinney v. Tarpley,*** 686 S.W.2d 574, 579 (Tenn. Ct. App. 1984) ("An agreement to 'hold harmless' is a contract of indemnity which requires the indemnitor to prevent loss to the

indemnitee or to reimburse the indemnitee for all losses suffered from the designated peril."). This issue is found adverse to Husband.

Husband also argues that the trial court erred in finding that his $5,000 payment to Wife was intended by the parties to be a reimbursement of Wife's involuntary payment on the 1991 tax liability. The trial court resolved this issue in favor of Wife on the basis of witness credibility. The trial court is in the best position to assess the credibility of the witnesses; accordingly, such credibility determinations are entitled to great weight on appeal. ***Massengale v. Massengale,*** 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995). In fact, this court has noted that "on an issue which hinges on witness credibility, [the trial judge] will not be reversed unless, other than the oral testimony of the witnesses, there is found in the record clear, concrete and convincing evidence to the contrary." ***Tennessee Valley Kaolin Corp. v. Perry,*** 526 S.W.2d 488, 490 (Tenn. Ct. App. 1974). Upon examining the record, we do not find any "clear, concrete and convincing evidence" that is contrary to the trial court's determination of this issue. Husband's argument is without merit.

Husband next argues that the trial court erred in finding him in civil contempt and in ordering him to pay Wife the amount of the unpaid life insurance premiums. We hold that a finding of civil contempt is inappropriate in this case and thus reverse the trial court on this issue.

Civil contempt is remedial in nature; its purpose is to coerce the contemnor into complying with the court's order. ***Robinson v. Gaines,*** 725 S.W.2d 692, 694 (Tenn. Crim. App. 1986). In this case, Husband was in compliance at the time of the hearing, having designated Wife as the beneficiary of the Valley Forge policy the day before the hearing. Because Husband did not have to be coerced into *presently* complying with the divorce judgment, a finding of *civil* contempt is not supported by the evidence. While Husband may have been guilty of criminal contempt for his failure to maintain life insurance in the past, this case was not tried as one for criminal contempt; thus, the judgment cannot be affirmed on that basis.

Finally, Husband appeals the award of attorney's fees. An award of attorney's fees is within the discretion of the trial court, and we will not reverse an award absent an abuse of that discretion. *See* T.C.A. § 36-5-103(c) (Supp. 1999). *See also*, ***Aaron v. Aaron,*** 909 S.W.2d 408, 411 (Tenn. 1995). We do not find that the trial court abused its discretion in ordering Husband to pay half of Wife's attorney's fees. This issue is also without merit.

## V. *Conclusion*

The order of the trial court awarding Wife an amount approximating the unpaid insurance premiums is reversed. In all other respects, the judgment of the trial court is affirmed. Costs on appeal are taxed to the parties equally. This case is remanded for such further proceedings, if any, as may be required and for collection of costs assessed below, all pursuant to applicable law.

_____

CHARLES D. SUSANO, JR., JUDGE