IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 11, 2001 Session

## JOHN DAVID FLOYD v. CAROLYN FLOYD

**A Direct Appeal from the Chancery Court for Rutherford County**
**No. 97DR-1002     The Honorable Royce Taylor, Judge**

---

**No. M2000-02344-COA-R3-CV - Filed August 31, 2001**

---

When husband and wife divorced, they signed a marital dissolution agreement which was incorporated into the Final Decree of Divorce providing, *inter alia*, that husband would have visitation rights with wife's daughter by a previous marriage and husband would in turn pay college tuition and expenses for the child and would leave to the child by Will one-fourth of his estate. A dispute arose as to the extent of visitation, and husband filed a petition to establish visitation rights. Wife filed a petition to require husband to continue his obligations expressed in the marital dissolution agreement. The trial court felt that there was no meeting of the minds between the parties with regard to the visitation issue; therefore, there was no valid contract. Husband appeals. We reverse and remand.

**Tenn.R.App.P. 3; Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Darrell L. Scarlett, Murfreesboro, For Appellant, John David Floyd

James L. Weatherly, Jr.; Joseph T. Howell, Nashville, For Appellee, Carolyn Floyd

**OPINION**

John David Floyd ("Husband") and Carolyn Floyd ("Wife") were married in 1994. At the time of the marriage, Ms. Floyd had one minor daughter, Katie Armstrong, age 3, born of a previous marriage. Ms. Floyd had sole custody of Katie. Mr. Floyd also had one minor daughter from a previous marriage, Stephanie. On July 24, 1997, Mr. Floyd filed a petition for divorce, however the parties' separation was not final until June of 1999. On August 18, 1999, a Final Decree of Divorce was entered incorporating a Marital Dissolution Agreement ("MDA"), which states in pertinent part:

8. Husband shall continue to visit, and be allowed to visit, wife's child Katie Armstrong and, further, Husband shall pay the said Katie Armstrong's college expenses for a period of four (4) years, said expenses to be housing, food, books, tuition and Husband shall provide the said Katie Armstrong with an automobile. In order to secure future payment of the Six Thousand Dollars ($6,000.00) per month referenced herein above, Husband shall obtain a life insurance policy in the amount of One Million Dollars ($1,000,000.00) with Wife being designated as beneficiary in the amount of Five Hundred Thousand Dollars ($500,000.00) and Katie Armstrong being designated as beneficiary for the remaining Five Hundred Thousand ($500,000.00). Said life insurance policy shall be maintained for a period of one hundred and twenty (120) months from and after the execution of this agreement and the granting of the divorce in this cause.

* * *

12. Husband shall leave no less than twenty-five percent (25%) of his estate, upon his death, to Katie Armstrong and the said Katie Armstrong shall have a lien against the estate of Husband to the extent of twenty-five percent (25%) of the same.

13. Husband shall provide health care insurance covering Katie Armstrong until such time as the child graduates from college or until she attains the age of twenty-three (23) years, whichever shall first occur.

On May 3, 2000, Wife filed Petition to Enforce Final Decree of Divorce in which she averred that a dispute had arisen between the parties concerning the scope of the right vested in Husband by the provision of the Final Decree granting him the right "to visit" Katie Armstrong. Wife's petition contends that she offered to establish regular visits, Friday through Sunday one weekend per month, and every Wednesday for dinner from 5:00 p.m. to 7:00 p.m., and has requested that Katie not be removed from Rutherford County without her permission. Wife stated that she asked that Husband refrain from the excessive consumption of alcohol when transporting Katie in an automobile. Wife averred that Husband refused to agree to these proposals. Wife requested that the trial court order visits between the Husband and Katie for the second weekend of each month from 6:00 p.m. on Friday to 6:00 p.m. on Sunday, and each Wednesday from 5:00 p.m. until 7:00 p.m., and further that the court order that Katie not be removed from Rutherford County without her permission. Wife further requested that the trial court order Husband to refrain from the excessive consumption of alcohol while in the presence of Katie or at any time that he is transporting Katie.

Husband responded by filing Petition to Establish Specific Visitation. Husband's petition averred that Wife repeatedly interfered with his attempts to exercise visitation with Katie. Husband requested that he be awarded specific visitation with Katie, that Wife be enjoined from making derogatory comments about him to Katie, and that Wife be held in contempt of the trial court's previous order. Wife answered denying that Husband had any specific rights to visitation.

A hearing was held on July 19, 2000, and a subsequent order was entered on August 31, 2000 stating in part:

> This cause came to be heard on the 19th day of July, 2000 upon the petition to enforce final decree of divorce, petition to establish specific visitation, testimony of witnesses, statement of counsel and the record as a whole from all of which the Court determined there was no meeting of the minds with regard to the visitation issues and the responsibilities set forth in the first sentence of paragraph eight (8) and, as a result, no valid, binding contract was achieved.
>
> IT IS THEREFORE ORDERED:
>
> 1. The first sentence contained in paragraph number eight (8) of the Marital Dissolution Agreement be, and hereby is, declared to be unenforceable and be, and hereby is, deleted form the Marital Dissolution Agreement. All other provisions of the Marital Dissolution Agreement previously incorporated into the Final Decree of Divorce be, and hereby are, ratified and approved.

Husband appeals the order raising two issues as stated in his brief:

> 1. Whether the evidence preponderates against the Trial Court's conclusion there was no meeting of the minds relative to the portions of the Marital Dissolution Agreement dealing with visitation.
>
> 2. If there was no meeting of the minds relative to visitation, and if husband is not awarded visitation with the minor child, whether husband should be relieved of all obligations voluntarily assumed in exchange for visitation privileges with wife's child from a previous marriage.

Since this case was tried by the trial court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

In Husband's first issue, he contends that the public policy of this state is to provide for the welfare and betterment of children. He asserts that he contracted to provide substantial financial support to Katie and that both he and Wife agreed that it would be in Katie's best interest for him to continue to have a relationship with her. Husband asserts that he is entitled to have the court enforce the terms of the MDA with regard to visitation as they are subject to the continuing jurisdiction of the court for the purposes of future modification. In addition, Husband contends that both he and Wife understood that he would receive standard visitation of every other weekend, and that he had visitation with Katie on that basis for 6 to 8 months following the execution of the agreement.

"Tennessee law does not provide for any award of custody or visitation to a non-parent *except as may be otherwise provided by our legislature.*" ***In re Thompson,*** 11 S.W. 3d 913, 919 (Tenn. Ct. App. 1999) (Emphasis in original) (citing T.C.A § 36-6-301 *et seq.)*[1] A step-parent who provides child support may be granted visitation rights by a court pursuant to T.C.A. § 36-6-303 (a), and such an order of visitation remains under the control of the court. T.C.A § 36-6-303 (b). Although it is apparent that Husband has provided and continues to provide for Katie, we are not willing to apply this statute to support Husband's right to visitation as he is not "contributing towards the support of the child" in the manner contemplated by the Tennessee Child Support Guidelines promulgated by the Department of Human Services ("child support guidelines"). Therefore, absent a binding contract, Husband has no right protected by law to visit Katie.

In preparation for a divorce, a husband and wife often enter into a property settlement agreement that is later incorporated into a final decree. Such agreements may contain terms as to parties' legal duties, as well as defining obligations outside the scope of the parties' legal duties. Where parties to a divorce contract with regard to terms that do not include a legal duty, the agreement maintains its contractual nature after incorporation into a court order and may be enforced as any other contract. ***Penland v. Penland,*** 521 S.W.2d 222, 224 (Tenn. 1975). Where parties contract with respect to the legal duty of child support or alimony *in futuro,* upon approval by the court, the agreement becomes merged into the divorce decree, losing its contractual nature. "[O]nly that portion of a property settlement agreement between husband and wife dealing with the legal duty of child support, or alimony over which the court has continuing statutory power to modify, loses its contractual nature when merged into a decree for divorce." ***Id.*** at 224.

In the instant case, parties have contracted regarding terms that do not include a legal duty, but does, however, involve visitation of a minor child, which must stay under the authority of the court to be changed or modified as circumstances indicate. Therefore, a sort of hybrid agreement

---

[1] Tennessee cases have found that chancery courts have inherent jurisdiction, extending beyond their statutory jurisdiction, to act in relation to property and other interests of minors. ***In re, Thompson,*** 11 S.W.3d at 919 (citations omitted). However, that jurisdiction has not been extended to empower courts to grant visitation to a third party. ***Id.***

has been created: one that involves no legal duty, but one that should remain under the jurisdiction of the court.

In interpreting the terms of a marital dissolution agreement incorporated into a final decree of divorce this Court stated:

> A divorce decree which incorporates a marital dissolution agreement is to be construed like other written instruments, with the court seeking to determine the apparent purposes in the minds of the draftsmen and the trial court. *See Livingston v. Livingston*, 58 Tenn.App. 271, 429 S.W.2d 452 (Tenn.App.1967). The general rules of evidence regarding the admission of parol evidence and the construction of written instruments also apply to such decrees. *Id.* As with other instruments, parol evidence is inadmissible to vary, alter, or contradict such a decree where the decree is complete, unambiguous, and valid, or where there is no fraud, accident or mistake, or claim or allegation thereof with respect to the agreement incorporated in the instrument. *See Livingston*, *supra,* at 457 and C.J.S., Evidence § 51, pp. 214-215 (1981). *As with the interpretation and construction of contracts, however, the court may admit evidence which will enable the court to place itself in the situation of the parties at the time they entered into the marital dissolution agreement which the decree incorporates. See Nashville Life Ins. Co. v. Matthews,* 76 Tenn. 499 (1881).

*Barzizza v. Barzizza,* No. 02A01-9110CV00246, 1992 WL 139862, *4 (Tenn. Ct. App. June 23,1992). (Emphasis added). Evidence of intent is found in the language used by the parties considered in the light of their interest and other relevant circumstances at the time the contract was executed, and in the practical construction given to the language by the parties "as disclosed by their actions subsequent to its execution." *City of Columbia v. C.F.W. Const. Co.,* 557 S.W.2d 734, 739 (Tenn. 1977). According to the rule of practical construction, an interpretation given the contract by the parties, as shown by their actions and declarations, will be adopted by the court. *Hamblen County v. City of Morristown,* 656 S.W.2d 331, 335 (Tenn. 1983). Additionally, in interpreting the terms of a contract under Tennessee law, a condition of reasonableness is implied, even where the term "reasonable" is not used in the contract. *Moore v. Moore,* 603 S.W.2d 736, 739 (Tenn. Ct. App. 1980). In *Cagle v. Cagle,* No. 02A01-9710-CH-00265, 1998 WL 802019 *3 (Tenn. Ct. App. Nov. 18, 1998) the court held that a father's agreement to pay his son's college expenses was subject to the implied condition of reasonableness. Because a contract contains terms of difficult construction about which parties disagree, that does not allow parties to contend that they did not have a meeting of the minds. *Hawkins v. Hart,* No. 01A01-9707-CV-00294, 1998 WL 272926 *4 (Tenn. Ct. App. May 29, 1998) (citing 17 Am.Jur.2d Contracts § 22, at 359). By signing the agreement the parties bind themselves to the interpretation that a court may place on the language of their agreement. *Id.*

The cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention consistent with legal principles. *Rainey v. Stansell,* 836 S.W.2d 117 (Tenn. Ct. App. 1992). Courts are to interpret and enforce the contract as written, giving terms their plain and usual meaning. *Petty v. Sloan*, 197 Tenn. 630, 277 S.W.2d 355, 358 (1955); *Home Beneficial Ass'n v. White*, 180 Tenn. 585, 177 S.W.2d 545, 546 (1944). In construing a contract, courts must look at the language of the agreement and to the parties' intent and impose a construction that is fair and reasonable. *ACG, Inc. v. Southeast Elevator, Inc.*, 912 S.W.2d 163 (Tenn. Ct. App. 1995). Absent fraud or mistake, contracts will be enforced according to their terms, even though they contain arguably unjust or harsh terms. *Whaley v. Underwood,* 922 S.W.2d 110 (Tenn. Ct. App. 1995).

In other jurisdictions, agreements by step-parents to support a child which are supported by consideration have been held to be enforceable. The Court of Appeals of Maryland held that a stepparent may create a contractual right to support a child, *Brown v. Brown,* 412 A.2d 396 (Md. 1980), but that the step-father could not be imprisoned for falling behind in his child support payment as the agreement maintained its contractual nature. In *Dewey v. Dewey,* 886 P.2d 623 (Alaska 1994) the Supreme Court of Alaska enforced an agreement by a step-father to support his stepchild finding that the step-father's contractual obligation was supported by consideration including his right to claim the stepchild as a dependant and to receive visitation rights. Our own Eastern Section of the Court of Appeals upheld the denial of a petition for rehearing by a mother in a case involving an agreement incorporated into a final decree of divorce which provided for reasonable step-parent visitation where parties both acknowledged under oath that this was their agreement. *Mayfield v. Mayfield,* No. 03A01-9803-CV-00112, 1998 WL 512973 (Tenn. Ct. App. Aug. 19, 1998).

With that in mind, we proceed to Husband's first issue, whether the trial court erred in finding that there was no meeting of the minds with regard to the agreement that Husband would be permitted "to visit" the child. Generally, in the absence of a specific visitation schedule in a marital dissolution agreement and/or a final decree of divorce, the implied "reasonable" standard should apply. The child support guidelines set out what is intended to be reasonable visitation. The intention of the parties is paramount in considering the meaning of a contract. Additionally, according to the rule of practical construction, we may look to the conduct and declarations of parties to the agreement and their own interpretation of the same. *Hamblen County v. City of Morristown*, 656 S.W.2d 331, 335 (Tenn. 1983). The record indicates conduct by the parties which supports interpretation of the term "to visit" as meaning the standard visitation as defined by the guidelines. Husband claims that for six to eight months following the execution of the agreement, he had visitation with Katie every other weekend. Wife does not deny this, and indicates that Katie was with Husband at the times that he had standard visitation with his own daughter.

In addition, we must consider this contract as a whole in determining its meaning. *Cookeville Gynecology & Obstetrics, P.C. v. Southeastern Data Systems, Inc.,* 884 S.W.2d 458 (Tenn. Ct. App. 1994). Considering the agreement of the parties as a whole with an implied term of reasonableness, it is clear that the parties intended that the consideration for Wife's allowing Husband "to visit" Katie be that he provide Katie with college tuition plus books and living

expenses, a car, health insurance for her, that Katie is listed as a beneficiary on a policy of insurance on Husband's life, and that Katie inherit not less than one quarter of Husband's estate.

Courts are charged with the duty of enforcing contracts as written. ***Winfree v. Educators Credit Union,*** 900 S.W.2d 285 (Tenn. Ct. App. 1995). Therefore, we find that the parties have contracted for Husband to visit Katie, and that the intended meaning of the term "to visit" should be interpreted according to the child support guidelines' description of standard visitation. ***See*** Tenn. Comp. R. & Regs. 1240-2-4-.02(6) (1994) (describing standard visitation as every other weekend, Friday through Sunday, two weeks in the summer, and two weeks during the holidays). Important to our holding is the indication by both parties that they share a desire that Husband continue his relationship with Katie, a mutual expression that the relationship between Husband and Katie is in Katie's best interest, and our conclusion that Husband's continued contributions to Katie's support are in Katie's best interest. We believe that this holding is consistent with our public policy that in matters concerning child custody, support and visitation, the welfare of the child has always been the paramount consideration. ***Luke v. Luke,*** 651 S.W.2d 219, 221 (Tenn. 1983). Having so held, Husband's second issue is moot.

Accordingly, we reverse the ruling of the trial court and remand the case. On remand the trial court is to hold a hearing on the issue of visitation to consider evidence including Wife's allegations of excessive consumption of alcohol in the presence of Katie and Husband's disregard of Wife's efforts to discipline Katie, as well as Husband's contentions of Wife's efforts to interfere with his visitation. In absence of a finding that standard visitation would not be in Katie's best interest, visitation should be set as contracted by the parties and interpreted by this Court to indicate standard visitation as set forth in the child support guidelines. Further, the trial court may in its discretion limit the visitation if it deems such limitation to be in the best interest of the child. The order of visitation shall stay within the jurisdiction of the trial court for future modification. Costs of the appeal are taxed against the Appellee, Carolyn Floyd.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.