IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 10, 2002 Session

## EILENE COPENHAGEN v. ROGER COPENHAGEN

**Appeal from the Circuit Court for Davidson County**
**No. 96D-627     Muriel Robinson, Judge**

**No. M2002-00217-COA-R3-CV - Filed February 6, 2003**

Appellant, former wife of Appellee, filed a Petition seeking to convert alleged rehabilitative alimony into permanent alimony *in futuro* and requesting certain other relief, including all accrued and vested benefits in her former husband's retirement plan. The trial court dismissed the Petition in its entirety holding the alimony previously awarded to be alimony *in solido*. We reverse the finding as to the character of the alimony previously awarded and affirm as to all other relief sought. The case is remanded to the trial court for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed in Part,**
**Affirmed in Part, and Remanded**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, J., and JOHN TURNBULL SP. J., joined.

Larry D. Crabtree, Nashville, Tennessee, for the appellant, Eilene Copenhagen.

Lawrence D. Wilson, Nashville, Tennessee, for the appellee, Roger Copenhagen.

### OPINION

Eilene Copenhagen and Roger J. Copenhagen were divorced by Decree of the Circuit Court of Davidson County entered October 30, 1998. This Decree declared the parties divorced and divided all marital property, including an equal division of benefits under a retirement plan of Mr. Copenhagen at Aladdin Industries, Inc. The Decree provided:

> It is further ORDERED, ADJUDGED and DECREED that Defendant, Roger J. Copenhagen, shall pay to Plaintiff, Eilene Copenhagen, as and for alimony, the sum of Five Hundred and no/100 ($500.00) Dollars per month for three years.

> It is further ORDERED, ADJUDGED and DECREED that Defendant, Roger J. Copenhagen, shall pay, as additional alimony, the Cobra insurance premium for

thirty-six (36) months to continue Plaintiff's health insurance through his employment.

Neither party appealed the decree of October 30, 1998, and, on June 28, 2001, before the expiration of the thirty-six month period for the payment by Roger J. Copenhagen of alimony pursuant to the Final Decree, Eilene Copenhagen filed a Petition for Continued and Increased Alimony. By this Petition she sought an increase in the amount of alimony together with a requirement that Mr. Copenhagen continue alimony payments until her death or remarriage, alleging in support thereof that she was afflicted with a degenerative disease. She further sought to have the court assign to her the remaining balance of Mr. Copenhagen's retirement benefits and requested that he be ordered to amend previous tax returns and pay self-employment taxes to the end that Mrs. Copenhagen might qualify for Social Security disability benefits.

Appellee moved for summary judgment asserting that the October 30, 1998 Decree was in all respects final and that the alimony awarded therein was alimony *in solido,* not rehabilitative alimony. At the hearing on this Motion for Summary Judgment on December 7, 2001, the following occurred:

>	MR. WILSON: This is my motion for summary judgement. Filed in response to a petition to modify previous Final Decree of the Court.
>	THE COURT: Okay.
>	MR. WILSON: The Petition to Modify asks the Court to modify what was we believe clearly an in solido alimony award in that the husband was ordered to pay a specific sum, being $500, for a specific period of time, being 36 months, therefore making the award determinable and therefore in solido. That request must be rejected inasmuch as in solido alimony awards are, as Your Honor knows, I believe, as the petitioner should know, are not modifiable.
>	The second request is that the previous Final Decree be modified to continue an award of alimony. The alimony award is not and may not be changed.
>	The Court is also asked to modify the previous award of marital property. In that case the husband's retirement fund was divided 50/50 as between he and the petitioner and they are asking now that they be awarded the balance of it; in other words, that the Court modify a previous distribution of marital property which again, likewise, is not modifiable.
>	They have asked for certain other items of relief, being that the Court ordered Mr. Copenhagen to refile income tax returns for many, many years in the past. We maintain that's not appropriate, in so much as the Court's ruling on its face, and we have a transcript of the Court's findings, specifically provided that Ms. Copenhagen, the petitioner here, participated in the running of the business and basically had the returns filed in respect of, that she signed the checks, and the Court very specifically found she knew what was going on or she certainly could have known what was going on. Therefore that request is equally inappropriate.

So we ask the Court to grant summary judgement on the basis of the fact that there is no law in support of the request, either singularly or in its entirety.

THE COURT: All right.

MS. MOSES: Your Honor, if I may pass up Ms. Copenhagen's supplemental response to Mr. Copenhagen's Motion for Summary Judgement. It was filed but it may not have gotten in the file yet because it was filed this morning.

I'm Marlene Eskind Moses and I along with Mr. Larry Crabtree represent Ms. Copenhagen in this matter. Ms. Copenhagen is 55 years old and she and her husband were married for 31 years. She currently and has suffered from osteogenesis imperfecta, which is a congenital collagen defect, Your Honor, and it continues to impair her tissues, organs, her skin and her bones.

And Your Honor ruled at the time of the divorce hearing that alimony should be awarded to her. At the time Evalina Cheadle represented Ms. Copenhagen. Mr. Wilson represented Mr. Copenhagen and the award specifically stated as follows, and I'll quote from the Final Decree.

"As in for alimony the sum of $500 per month for three years."

So the Final Decree was silent, Your Honor, as to the property categorization of the alimony.

Specifically in the transcript Your Honor found, and I'll quote - - actually it was from the excerpt of the transcript of the proceeding. Your Honor found that:

"Ms. Copenhagen at the time appears not to be employable. It is obvious. I'm looking at her. She's quite frail. She weighs 85 pounds and when she walks up to the table it appears that she is somewhat crippled. So for Mr. Copenhagen to think that she can go and get employment right away is pretty ridiculous to me."

You go on to say:

"I do feel that she is a candidate for some period of alimony."

You ordered, Your Honor, that will be his alimony deductible by him and listed as income by Ms. Copenhagen for these three years.

Specifically, when we were last here Your Honor allowed us to come back and have a court reporter and asked if there was any case law to be instructive to bring that before Your Honor. In fact there is a case that is right on point, Your Honor. It's Moore versus Moore.

And in that case the wife at the time was 62 years old. She had an eighth grade education. She was unemployed and her only regular income at the time was $399 per month in Social Security retirement benefits.

The Final Decree awarded the wife alimony. And it specifically stated, and I'll quote:

"$1,000 per month in alimony to be paid for 24 months or until her death or remarriage, whichever comes sooner."

She also had serious health problems and was uncertain whether or not she would be able to work to supplement her Social Security benefits.

The Appellate Court noted that:

> "Due to her age, her health and her lack of skills, it appears unlikely that Ms. Moore will be able to fully rehabilitate herself but she should be encouraged to make the attempt. If she does not succeed then she will be able to apply to the Court for a more permanent arrangement because an award of rehabilitative alimony remains within the Court's control for the duration of such award and may be increased, decreased, terminated or otherwise modified upon a showing of substantial and material change in circumstance."

So Moore case is on all fours to this Copenhagen case.

THE COURT: Really it's not because in the Moore case it had the stipulation, "or until her death or remarriage," which made it adjust[a]ble, so that's the distinguishing phrase in there.

I've read these. I remember this. The alimony stops at the appointed time. Your motion is denied and your petitioner is dismissed. Mr. Wilson's relief is granted.

MR. WILSON: Thank-you, Your Honor. I do have by way of a follow-up, and I'm not sure it's on the docket, but it's a request for Rule 11 sanctions.

THE COURT: I'm not going to do that at this time, but, you know, if they want to go to the Court of Appeals, the Court of Appeals may think different. But I remember this case and I meant it to be this amount of money for a fixed period. So I've granted your wish. I've granted your relief. It's dismissed. It's their cost and you can file an Affidavit for attorneys' fees and we will let the Court of Appeals decide. I remember this case and I said what I meant and meant what I said.

MS. MOSES: Your Honor, I have numerous cases that I would like to cite, but if you. . . .

THE COURT: I've already ruled, Ms. Moses. Thank-you.

The Order reflecting the December 7, 2001 hearing granted the Motion for Summary Judgment in its entirety and assessed attorney's fees against Appellant in the amount of $1,650. From this judgment, Eilene Copenhagen appeals.

As to all relief sought by the Petition other than on the alimony question, the Decree of October 30, 1998, not having been appealed, is final and constitutes the law of the case. As to matters other than alimony, summary judgment was property granted.

As to the proper characterization of the alimony granted in the October 30, 1998 Decree, the trial court may have meant what it said, but it did not say what it meant. The alimony established was for the fixed period of 36 months at the fixed amount of $500 per month. Prior to the 1993 amendments to Tennessee Code Annotated section 36-5-101, effected by Chapter 243 of the Public Acts of 1993, we would have no difficulty in classifying this alimony as alimony *in solido* for reasons set forth in *Dennis v. Dennis*, No. C.A.45, 1986 WL 7608 (Tenn. Ct. App. July 9, 1986). These legislative changes, in full force and effect on October 30, 1998, are far reaching. This Court has held:

-4-

Mrs. Gerbman argues that when the trial court modified the insurance obligation to make it a fixed number of payments of a fixed size, without stating any conditions or limitations on the award, the award was converted into alimony in solido, which the court no longer had any power to modify. Thus, she impliedly argues, the court was in error in reducing the monthly payments, and extending the length of the payment obligation.

The advent of rehabilitative alimony as a distinct category of spousal support has added complexity to the problem of correctly classifying an alimony award. Whereas alimony in solido and alimony in futuro can usually be distinguished without difficulty, rehabilitative alimony has some of the characteristics of both. It has a calculable total value like alimony in solido, but it is modifiable like alimony in futuro.

In the present case, the trial court modified an insurance obligation of indefinite duration (which, if it was alimony, was alimony in futuro) to an obligation of limited duration and fixed total value (which could theoretically be considered either rehabilitative alimony or alimony in solido). Responding to arguments from both sides, the chancellor stressed the purpose of the original award and the circumstances that made its initial modification necessary. Based on these considerations, he concluded that the modification created the kind of temporary support that remained within the jurisdiction of the courts to adjust as circumstances required.

*Rust v. Gerbman*, No. 01-A01-9608-CH-00361, 1997 WL 266844, at * 4 (Tenn. Ct. App. May 21, 1997) (no Tenn. R. App. P. 11 application filed). The alimony awarded in the October 30, 1998 Decree could qualify as either alimony *in solido* or rehabilitative alimony. The Decree is now a final judgment.

This Court has held:

Arguments of both parties focus on the meaning of the trial judge's order, which requires construction. The rule of construction in construing orders and judgment is:

> The general rule is that a judgment should be so construed as to give effect to every part of it and where there are two possible interpretations that one will be adopted which is in harmony with the entire record, and is such as ought to have been rendered and is such as is within the jurisdictional power of the court. Moreover, the judgment will be read in the light of the pleadings and the other parts of the record . . ."

*John Barb, Inc. v. Underwriters at Lloyds of London*, 653 S.W.2d 422, 423 (Tenn. Ct. App. 1983) (citing *Grant v. Davis*, 8 Tenn. C.C.A. 315, 8 Higgins 315 (Tenn. Ct. App. 1918). At the hearing of December 7, 2001, no testimony was offered, but the trial court asserted that she had intended the award in the October 30, 1998 Decree to have been alimony *in solido*.

The decree of October 30, 1998 was final when the Petition at issue in this case was filed in June of 2001 and when the Motion for Summary Judgment in response thereto was heard on December 7, 2001. The opinion of the trial court as to what it previously meant by the now final Decree is not relevant. The Supreme Court of Nebraska addressed the question in an analagous context.

> This appeal involves the question of whether one may obtain an interpretation of a decree by merely filing a motion requesting the court which initially entered the decree to interpret its own decree after the decree has become final.
>
> . . . .
>
> If we were to follow the procedure suggested by Ms. Neujahr, the only appropriate and proper witness would be the judge who entered the order. That judge then would change the decree so that, in light of a problem that has later arisen, the decree would conform to what it is he or she originally meant. Obviously, what the parties thought the judge meant is of no moment in interpreting the decree. Yet, the fact is that neither what the parties thought the judge meant nor what the judge thought he or she meant, after time for appeal has passed, is of any relevance. What the decree, as it became final, means as a matter of law as determined from the four corners of the decree is what is relevant.
>
> There are, obviously, instances when a decree is ambiguous and parties are left at their peril to know what they are authorized to do. When that situation arises, the parties must bring some form of action which raises the issue and thereby requires the court before whom the matter is then pending to resolve the issue as a matter of law in light of the evidence and the meaning of the decree as it appears.
>
> What the district court did in the instant case was simply to enter a modified supplemental decree, without authority, after the decree had already become final.

*Neujahr v. Neujahr*, 393 N.W.2d 47, 48, 50-51 (Neb. 1986).

Since the repeal of former Tennessee Code Annotated section 24-1-205 by the provisions of Chapter 273 of the Public Acts of 1991 and the adoption of Tennessee Rule of Evidence 605 by the supreme court, a trial judge is not competent to testify at a trial over which he or she presides. The final judgment of October 30, 1998 is to be construed, like other written instruments, with the determinative factor being the intent of the court to be gathered from all parts of the judgment and, where there are two possible interpretations, the interpretation to be adopted is the one most in

harmony with the entire record. *Branch v. Branch*, 249 S.W.2d 581 (Tenn. Ct. App. 1952); *Livingston v. Livingston*, 429 S.W.2d 452 (Tenn. Ct. App. 1967); *Grant v. Davis*, 8 Tenn. C.C.A. 315, 8 Higgins 315 (Tenn. Ct. App. 1918). If the order of the trial court is ambiguous, appellate courts will adopt a construction that correctly applies the law. *McGregor v. Rich*, 941 S.W.2d 74 (Tex. 1997); *Garcia v. Mireles*, 14 S.W.3d 839 (Tex. App. 2000).

Since the 1993 amendments to section 36-5-101 of the Code: "The law professes a distinct preference for rehabilitative alimony 'whenever possible,' and it is the type of support to be awarded unless the trial court finds that rehabilitation is not feasible. Tenn. Code Ann. § 36-5-101(d)(1). This record contains no such findings." *Stockman v. Stockman*, No. 01A01-9801-CH-00026, 1999 WL 617637 at * 4 (Tenn. Ct. App. Aug. 17, 1999).

At the trial October 30, 1998, the trial court made a specific finding that Mrs. Copenhagen was not, at that time, employable, but made no findings that rehabilitation was not feasible. The alimony awarded, giving proper effect to the legislative preference expressed by Tennessee Code Annotated section 36-5-101(d)(1), is rehabilitative and not *in solido*. The grant of summary judgment in this respect is reversed; the case is remanded to the trial court for consideration of the Petition for Continued and Increased Alimony on its merits. The grant of summary judgment is in all other respects affirmed. The award of attorney fees is reversed. Costs on appeal are assessed equally to the parties. Costs in the trial court will await trial on the merits of the alimony Petition.

_____
WILLIAM B. CAIN, JUDGE